**In the Matter of K.F., an Alleged Delinquent Child, Appellant,**

**v.**

**STATE of Oklahoma, Appellee.**

**No. J–90–0512.**

Court of Criminal Appeals of Oklahoma.

Sept. 6, 1990.

C. Thomas Kite, Oklahoma City, for appellant.

Robert H. Macy, Dist. Atty. Oklahoma County, Jane Johanningsmeier, Asst. Dist. Atty., Oklahoma City, for appellee.

## OPINION

LANE, Vice–Presiding Judge:

Appellant, a 17 year old juvenile, was charged in the Juvenile Division of the District Court of Oklahoma County with the offense of Possession of a Controlled Dangerous Substance with Intent To Distribute in Case No. JF–89–1127. The State of Oklahoma petitioned the court to certify the appellant to stand trial as an adult. A prosecutive merit hearing was held, and upon the court's finding that probable cause existed to show that the alleged crime was committed and that the juvenile committed the crime a certification hearing was held resulting in Appellant being certified to stand trial as an adult in the felony division of the district court. An appeal has been duly affected to this court; and upon proper consideration we affirm.

Since Appellant contends that the trial court committed reversible error in both of the hearings, we will treat each hearing separately in this opinion.

### Prosecutive Merit Hearing.

K.F. was stopped for a traffic violation by Oklahoma City police officer Stanley Craig Olive. Upon discovering that Appellant did not have a driver's license in his possession he arrested K.F., conducted a "pat down" search and placed him in the police unit. The officer required one of Appellant's two passengers to sit in the unit with Appellant. Olive then radioed for another unit to come to the scene to take charge of the second passenger, turned on a tape recorder that was hidden in the vehicle and went to Appellant's vehicle to secure it for impoundment. Upon returning to his unit, the officer retrieved the recorder and listened to its recording of a conversation between the appellant and the other person in the police car. The taped conversation revealed that K.F. had some rock cocaine in his coat pocket. Olive ordered Appellant out of the unit, searched him a second time and found 20 "rocks" of cocaine in K.F.'s coat. Olive arrested both Appellant and the passenger for possession of a controlled and dangerous substance with intent to distribute.

Appellant asked the trial court to suppress the evidence obtained as a result of the second search, and now contends that if this evidence is suppressed the court could not find prosecutive merit. Relying on the Securities of Communications Act, 13 O.S. Supp.1989, § 176.1, et seq., Appellant asserts that the officer violated the provisions of the act when he secretly recorded the conversation between Appellant and his friend. Section 176.3(1) makes it unlawful for any person to intercept "any wire, oral or electronic communication." Section 176.2(11) defines an oral communication as "any communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation." The Act further specifies in § 176.13 that any evidence obtained in violation of the Act is not admissible in an action against one of the communicants.

We have not previously interpreted these provisions, but other jurisdictions have construed legislative language similar to our statutes. *See, Brown v. Florida,* 349 So.2d 1196 (Fla.App.1977), *cert. denied* 434 U.S. 1078, 98 S.Ct. 1271, 55 L.Ed.2d 785 (1977) and *New Mexico v. Lucero,* 96 N.M. 126, 628 P.2d 696 (App.1971). In both of these cases officers recorded conversations between two people as they sat alone in a police car. The outcome of both cases turned on whether or not there was a reasonable expectation of privacy as required by language like that in our § 176.2. The Florida court reasoned:

> Once a person has been taken into custody by law enforcement authorities, his right to privacy has been effectively diminished, and he has no reasonable expectation of privacy.

*Brown,* 349 So.2d at 1197. The opinion goes on to explain that it does not matter if the person in custody has been charged and made an inmate of the jail, is in the police station prior to being charged or in a police vehicle. Furthermore, the New Mexico court determined that the actions of the police did not violate the arrestee's "*Miranda* rights" in that there was custody

but no interrogation on the part of the officer. We agree with this reasoning and find that the trial court did not commit error in admitting the evidence seized in the search of Appellant's pocket, and with that evidence, finding that there was prosecutive merit to the offense alleged.

### Certification Hearing.

Two witnesses testified at the certification hearing which was held some time after the finding of prosecutive merit. Gary Warmack, a social worker with the Department of Human Services testified that he was supervising K.F. as the result of an emergency in need of treatment petition filed subsequent to the date of this alleged offense. Appellant has had five contacts with the juvenile system other than this matter. There had been adjudications for Rape, Kidnapping and Joyriding which were dismissed after periods of supervision and one other emergency in need of treatment case that was also dismissed after a period of treatment. K.F. was working well with his plan of treatment in that his impulse control was improving and he was not a threat to the community if he continued to take his medication. Warmack recommended that Appellant be retained in the juvenile system with supervision and a requirement that he continue his treatment. If retained in the system he would be placed in the community and supervised for six months until he reached his 18th birthday. It was possible to continue supervision until he reached 19 years of age.

Dr. John R. Smith, a psychiatrist who was treating K.F. as a result of the current in need of treatment case, testified that he first came in contact with the appellant approximately one and a half years earlier when he was declared in need of treatment the first time. Appellant suffered from an inherited brain disease associated with hallucinations, delusions and paranoid thinking. His mother and grandmother suffer from the same disease. The malady is treatable with medication, and K.F. has responded well to this therapy. However, when he goes off his medication he becomes more paranoid, more clouded and confused in his way of thinking, more depressed and more vulnerable to influences and misinterpreting reality. When he is on medication he is able to distinguish right from wrong, but when he does not take his prescribed medicine he is less able to adhere to the right. On both referrals Appellant required hospitalization for a short period of time and was then able to function in his normal environment as long as he took his medicine. He will require the medication for the rest of his life, and the doctor could not guarantee that K.F. would continue taking it if he were not supervised. The doctor recommended that the appellant be retained in the juvenile system.

After considering the above testimony, the court made the following comments in the record:

Alright, the Court finds as follows, that the offense of possession of CDS with intent is extremely serious, Nineteen days after this incident occurred, the legislature made it a reverse certification offense to stress how serious they consider it. This Court considers it an offense against persons, since obviously drugs are intended to be consumed by persons, and it's the individuals who consume that are hurt. So for me, it's an offense against persons rather than property, although there is no clear precedent to guide me on that.

With regard to age, sophistication and maturity, when he's on his medication he knows right from wrong, and when he isn't that ability is blurred. He's 17½, he's going to be 18 in about eight months. They indicate that the INT aspect of it is problems or being successfully treated, which means it doesn't excuse his dealing in drugs. And to me 20 rocks of crack cocaine is dealing in drugs. I can't accept that as a personal use.

With regard to rehabilitation, DHS is going to leave him at home, and the evidence is that he's dealing in drugs, and I don't think we want drug dealers in the community, back on the street corner selling drugs, frankly. And that he's dealing drugs, and he's schizophrenic,

which suggests to me that he's an extremely dangerous person. That's a terrible combination in terms of protection of the public. We've had four and a half years to work with him. He's been adjudicated for serious offenses, Kidnapping and Rape 1, except for murder, that's about as serious as it gets. We've worked with him four and a half years, now he's into drugs, and like I say, he has mental problems which suggest that he's even more dangerous than maybe a person who deals drugs that's—does not have mental problems.

The above comments by the trial judge indicate that he followed the guidelines mandated by 10 O.S.Supp.1989, § 1112(b). Appellant alleges that the Court abused its discretion in its findings concerning rehabilitation of the juvenile. This allegation is based on the fact that both of the witnesses were experts, and they recommended that K.F. be retained in the juvenile system for treatment. In *J.W.N. v. State*, 620 P.2d 1341 (Okl.Cr. 1980), we held that the question of amenability and rehabilitation must be decided by substantial evidence in favor of certification. However, we went further to state that the trial court was not required to give exclusive effect to the testimony of experts. *Id.* at 1344. When all of the evidence available to the trial court is considered we cannot say that the trial court abused its discretion in certifying the juvenile to stand trial as an adult. The decision of the trial court should be AFFIRMED.

PARKS, P.J., and BRETT, LUMPKIN and JOHNSON, JJ., concur.