Argued and submitted August 9, 1993, reversed and remanded on appeal; affirmed
on cross-appeal July 27, 1994

# STATE OF OREGON,
*Appellant - Cross-Respondent,*

*v.*

# LARRY DEAN WISCHNOFSKE,
*Respondent - Cross-Appellant.*

(TM92-0141; CA A76385)

878 P2d 1130

Kaye E. Sunderland, Assistant Attorney General, argued the cause for appellant - cross-respondent. With her on the brief were Charles S. Crookham, Attorney General, and Virginia L. Linder, Solicitor General.

Ronald L. Marek argued the cause and filed the briefs for respondent - cross-appellant.

Before Deits, Presiding Judge, and Edmonds and Riggs,* Judges.

DEITS, P. J.

---

* Riggs, J., *vice* Durham, J.

## DEITS, P. J.

The state appeals the trial court's order suppressing portions of a tape recording of statements defendant made while alone in the back seat of a patrol car following his arrest. Defendant cross-appeals the trial court's denial of his motion to suppress evidence of his performance on field sobriety tests. We reverse on the appeal and affirm on the cross-appeal.

On September 29, 1991, while investigating a two-car accident, Officer Eastham reasonably suspected that defendant had been driving under the influence of intoxicants in violation of ORS 813.010. Eastham advised defendant that their conversation was being recorded and gave him *Miranda*-like warnings. He then asked defendant to perform field sobriety tests and informed him of the consequences of a refusal. Defendant refused to perform the field sobriety tests. Eastham arrested and handcuffed defendant. About five minutes after informing defendant that their conversation was being recorded, Eastham placed him in the back seat of the patrol car. Eastham also placed the tape recorder, which was still recording, on a platform between the driver's and right front passenger's seat of the patrol car in a place visible to an occupant of the back seat. Eastham remained outside the patrol car for about 25 minutes to complete his investigation of the accident. During that time, defendant, while alone in the patrol car, made incriminating statements which were recorded by the tape recorder. The trial court found that, although Eastham did not inform defendant that the recorder was in the patrol car or that it was operating, he did not mislead defendant into thinking that no recording would be made.

At trial, defendant moved to suppress the tape recording of the statements that he made while in the patrol car. He argued that the recording violated ORS 165.540(1)(c), ORS 133.721 *et seq*, Article I, section 9, of the Oregon Constitution and the Fourth Amendment. The trial court held that defendant's statements were not "conversation" under ORS 165.535(1), because he did not transmit or attempt to transmit information to anyone else. For the same reason, the trial court concluded that his statements were not "oral communication" for purposes of ORS 133.721 *et seq*. The trial court,

however, concluded that defendant's "privacy rights" under the Fourth Amendment were violated. It did not reach defendant's state constitutional argument.

The state appeals the trial court's ruling. On appeal, defendant concedes that the tape recording did not violate ORS 165.540(1)(c), because his statements were not "conversation" under the statutory definition of that term in ORS 165.535(1). He argues, here, however, that the trial court's suppression of the statements may be upheld on a number of grounds. First, he continues to assert that the tape recording of his statements violated ORS 133.721 *et seq*. He also argues that the statements were obtained in violation of Article I, section 9, of the Oregon Constitution and the Fourth Amendment.

■      We first address defendant's argument that the tape recording of his statements violated ORS 133.721 *et seq*, because an *ex parte* order to intercept the communication was not obtained. *State v. Holmes*, 311 Or 400, 404, 813 P2d 28 (1991). We conclude that these statutes are not applicable here. ORS 133.735 provides that an "aggrieved person" may move to suppress "the contents of any wire, electronic or oral communication intercepted under ORS 133.724" on the grounds that it was unlawfully intercepted. No wire or electronic communication was involved here. Therefore, the critical question is whether defendant's statements were "oral communication." That term is defined in ORS 133.721(7) as

> "any oral communication, other than a wire communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation."

We hold that defendant's statements were not oral communication under the statute, because defendant did not have a justifiable expectation that his statements made out loud to himself would not be intercepted after he was arrested and seated in a patrol car.[1]

---

[1] The trial court concluded that defendant's statements did not constitute "oral communication," because he "had no intent to furnish information to another." According to the trial court, defendant's statements were not "communication" at all. We need not address whether the trial court's definition of the term "communication" for purposes of ORS 133.721 *et seq*. is correct, because of our conclusion that defendant did not have a justifiable expectation of non-interception.

No Oregon case directly addresses the requirement that a person hold a justifiable expectation of non-interception before statements become "oral communication" under ORS 133.721(7). However, the statutes at issue were adopted to make Oregon's provisions consistent with federal standards in Title III of the 1968 Omnibus Crime Control Act, 18 USC §§ 2510-2520. *State v. Oslund*, 71 Or App 701, 706, 693 P2d 1354, *rev den* 299 Or 37 (1985). Accordingly, because the state and federal statutes are nearly identical,[2] decisions construing the federal statutes are helpful in construing the meaning of "oral communication" in ORS 133.721(7).

In *U.S. v. McKinnon*, 985 F2d 525, *cert den* 114 S Ct 130 (11th Cir 1993), the court held that the defendant's conversations in the back seat of a patrol car were not "oral communication" for the purposes of 18 USC § 2510(2), because the defendant did not have a justifiable expectation that his conversations would not be intercepted.[3] Similarly, we conclude that, under the circumstances here, defendant did not have a justifiable expectation of non-interception. Defendant had been arrested, handcuffed and placed in the back seat of the patrol car. Eastham did nothing to suggest to defendant that he would be afforded any privacy in the back seat of the patrol car. We hold that the tape recording of statements made by defendant while he was alone in the patrol car did not violate ORS 133.721 *et seq*.

We now turn to defendant's state constitutional argument. *State v. Kennedy*, 295 Or 260, 166, 666 P2d 1316 (1983). Defendant argues that the tape recording of the contested statements constituted a warrantless search in

---

[2] 18 USC § 2510(2) defines "oral communication" as "any oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation[.]"

[3] We note that the defendant in *U.S. v. McKinnon, supra,* moved to suppress his *pre-arrest* conversations while in the back seat of a patrol car. Here, we need not decide whether defendant would have had a justifiable expectation of privacy in his "conversations" if he had not been under arrest. *Compare Springle v. State*, 613 So 2d 65 (Fla App 4 Dist 1993) (defendant ordered to wait in back seat of patrol car for own safety without probable cause or articulable suspicion had justifiable expectation of privacy in conversation) *with Brown v. State*, 349 So 2d 1196 (Fla 4th DCA 1977), *cert den* 434 US 1078 (1978) (arrested person confined in police car has no reasonable expectation of privacy in conversations).

violation of Article I, section 9, of the Oregon Constitution.[4] Article I, section 9, protects both property and privacy interests. *State v. Owens*, 302 Or 196, 729 P2d 524 (1986). Here, no property interest of defendant's is at issue. Article I, section 9, protects an individual's "privacy interest" which is defined as "an interest in freedom from certain forms of governmental scrutiny." *State v. Dixson/Digby*, 307 Or 195, 206, 766 P2d 1015 (1988). "[T]he privacy protected by Article I, section 9, is not the privacy that one reasonably *expects* but the privacy to which one has a *right.*" *State v. Campbell*, 306 Or 157, 164, 759 P2d 1040 (1988). (Emphasis in original.)

■　　Article I, section 9, does not protect citizens from all forms of governmental observation, but only from unreasonable searches and seizures. As the court explained in *State v. Wacker*, 317 Or 419, 856 P2d 1029 (1993):

> "The privacy interests protected from unreasonable searches under Article I, section 9, are defined by an objective test of whether the government's conduct 'would significantly impair an individual's interest in freedom from scrutiny, *i.e.*, his privacy.' If no privacy interest is implicated, no 'search' has occurred under Article I, section 9." 317 Or at 425 (quoting *State v. Dixson/Digby*, 307 Or 195, 211, 766 P2d 1015 (1988)). (Citation omitted.)

■　　Here, the issue is whether defendant had a protected privacy interest in the contested statements. The interception here did not occur in a public place, in defendant's home, or even in his car; rather, defendant chose to speak out loud while in the back seat of a patrol car, after he had been arrested and informed that his conversations were being recorded, with a tape recorder visible on the passenger's side of the front seat. The police conduct here was not very intrusive. Even if the police engaged in this practice with unfettered discretion, it would not significantly impair the people's right to freedom from scrutiny. We conclude that no privacy interests of defendant's were invaded here and, thus, there was no search within the meaning of Article I, section 9, of the Oregon Constitution.

---

[4] Article I, section 9, of the Oregon Constitution provides, in part:

"No law shall violate the right of the people to be secure in their persons, house, papers, and effects, against unreasonable search, or seizure[.]"

■    We reach the same conclusion under the Fourth Amendment.[5] Fourth Amendment analysis involves a two part inquiry: (1) whether the individual has exhibited an intention to protect privacy; and (2) whether the individual's expectation of privacy is one that society is prepared to recognize as reasonable. *Katz v. United States,* 389 US 347, 88 S Ct 507, 19 L Ed 2d 576 (1967); *State v. Wacker, supra.* *People v. Crowson,* 33 Cal 3d 623, 190 Cal Rptr 165, 660 P2d 389 (1983), involved circumstances very similar to the situation here. The court explained:

> "[W]hether [the defendant's] challenge is based on [the California constitution] or the Fourth Amendment, the issue is whether he had a reasonable expectation that he could conduct a conversation with a suspected accomplice free of police eavesdropping while under arrest and seated in the back seat of a police car. We conclude that he did not.

> "[The defendant and his suspected accomplice] obviously had a *subjective* expectation of privacy; otherwise they would not have made incriminating statements. The 'reasonableness' of [the defendant's] expectation of privacy, however, is ultimately a matter of common sense and practical judgment. '[T]he expectation [must] be one that society is prepared to recognize as "reasonable." ' Here, [the defendant] had just been arrested at a neighborhood bar—a most extreme interference with the 'right to be left alone'—and remained in the custody of the police on the way to jail. Objectively, he surely had no reason to suspect that his conversation with a suspected accomplice in the back of the police car would be afforded any kind of confidentiality. Under these circumstances, we conclude that [the defendant] did not have a *reasonable* expectation of privacy." (Emphasis in original; citation omitted.)

We agree with the above reasoning and conclude that whatever expectation of privacy defendant may have had in the contested statements, it is not an expectation that society is prepared to recognize as reasonable. *See U.S. v. McKinnon,*

---

[5] In *State v. Ainsworth,* 310 Or 613, 801 P2d 749 (1990), the court explained that the inquiry under the Fourth Amendment is whether the defendant had a reasonable expectation of privacy, and under Article I, section 9, the inquiry is whether a police officer's conduct infringes upon the privacy to which a defendant has a right. The court also noted that: "Although the ultimate question that must be answered to determine whether police have conducted a search differs, many of the issues raised by the analyses are similar." 310 Or at 620 n 8.

*supra*, and cases cited therein. Accordingly, defendant's Fourth Amendment rights were not violated by the tape recording of his statements. The trial court erred in suppressing the tape recording on that ground.

Defendant cross-appeals the trial court's denial of his motion to suppress the results of certain field sobriety tests. He argues that his refusal to perform field sobriety tests at the scene of the investigation barred Eastham from requesting that he perform field sobriety tests at the jail without readvising him of the consequences of a refusal. The state argues, relying on *State v. Trenary*, 316 Or 172, 850 P2d 356 (1993), that, because defendant voluntarily complied with Eastham's request at the jail to perform field sobriety tests, the fact that he was not again advised of the consequences of a refusal is of no consequence.

The trial court made the following findings of fact:

> "Defendant testified at the omnibus hearing and did not indicate that he had forgotten the officer's earlier advise [sic] regarding ORS 813.136 or forgotten that he could decline to perform field sobriety tests and that evidence of his refusal could be used against him in court. Absent that evidence the logical conclusion is that defendant simply changed his mind about performing the tests."

Here, the trial court found that defendant voluntarily performed the field sobriety tests. Defendant does not challenge that finding. On the basis of this record, we agree with the state that, even if the statutes required that defendant be readvised of the consequences of refusal, because defendant voluntarily performed the field sobriety tests, he was not prejudiced. As the court explained in *State v. Trenary, supra*, 316 Or at 178:

> "The failure of the legislature to provide for any consequence if a driver takes field sobriety tests without being informed of the consequences of refusal suggests that it intended that no consequence follows because, in that event, the goal of the statute—that suspected DUII drivers perform field sobriety tests—has been achieved. The legal effect—and intended effect—of the legislature's decision is, in essence, 'no harm, no foul.' The legislature found no prejudice to drivers who take the test without being informed of the consequences of refusal. Therefore, it did not address that contingency in the statute.

"A driver who takes the test without being informed of the consequences of refusal has not been harmed in any legal sense. When a driver drives a car, he or she impliedly consents to field sobriety tests to determine if the driver is under the influence, upon the request of a police officer who has reasonable suspicion that the driver is under the influence. In taking the test, the driver is only doing that which he or she has already consented to do."

The trial court did not err in denying defendant's motion to suppress the results of field sobriety tests.

On appeal, reversed and remanded; affirmed on cross-appeal.