**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Victor RAMIREZ, Petitioner and Appellant.**

**No. 18762.**

Supreme Court of South Dakota.

Argued April 26, 1995.

Decided July 12, 1995.

Mark Barnett, Atty. Gen., Todd A. Love, Asst. Atty. Gen., Pierre, for plaintiff and appellee.

Jamie L. Damon, Pierre, for petitioner and appellant.

KONENKAMP, Justice.

After a traffic stop a highway patrol officer secretly tape recorded a conversation between the driver and his companion while they were in custody in the back of the patrol vehicle. When they were released, the officer listened to the tape and heard the driver admit to his companion that cocaine was in his car. The trooper again stopped the vehicle, searched the car and found cocaine. The driver was charged with possession of a controlled substance. His motion to suppress the taped admissions was denied. Following a discretionary appeal, we affirm.

*FACTS*

On a snowy February 22, 1994, Victor Ramirez drove past Trooper Steve Swenson of the South Dakota Highway Patrol on Interstate 90. Trooper Swenson noticed an object dangling from the vehicle's rear view mirror. As the presence of such an object violates SDCL 32–15–6,[1] the trooper stopped the vehicle. He approached the car, apprised Ramirez of the offense—the dangling object was an air freshener—and asked for his license and proof of registration. Unable to produce his registration, Ramirez accompanied the trooper to the patrol car and sat in the front seat where he was issued a warning for the dangling object. Trooper Swenson also radioed in for a computer check to verify the registration. Perceiving Ramirez's apparent nervousness, the trooper questioned him about possessing illegal firearms or drugs. Ramirez denied possessing these things, but Trooper Swenson nonetheless asked for permission to search the vehicle. Ramirez initially acquiesced, but soon withdrew consent when the trooper placed him

and his passenger, Lisa Hartfield, in the back of the patrol car.

Trooper Swenson then announced that he would instead conduct a "plain view" search of Ramirez's car while awaiting the vehicle registration check. Before stepping out of his car to begin the search and while Ramirez and his companion sat in the back seat of the police car, the trooper surreptitiously activated a tape recorder to record the two while he was outside his vehicle. The officer justified this action as a protective measure in case Ramirez or his companion placed something under the patrol car's seat and to prove that they were not being illegally detained. During the search the trooper looked through the windows in Ramirez's car and at one point opened a door in order to closely examine a seed on the driver's seat. His "plain view" search uncovered nothing. While the trooper was outside his car, the recorder captured Ramirez saying, "I've got the coke and shit up front ..." The officer returned to the patrol car and permitted the two to leave once the vehicle's registration had been confirmed. Upon hearing this inculpatory statement, Trooper Swenson pursued and stopped Ramirez again. Now possessing probable cause, Swenson's interior search of Ramirez's vehicle led to the discovery of a mirror with cocaine residue.

Both Ramirez and Hartfield were arrested and read their *Miranda* rights for the first time. Charged with possession of a controlled substance, Ramirez asked the trial court to exclude the recorded statements from the evidence to be presented at trial. The trial court refused, but this Court granted an intermediate appeal on the suppression decision to consider the following issue:

Did the trial court err in denying suppression of the statements secretly recorded during the "plain view" search?

*ANALYSIS*

■ We review a trial court's decision on a suppression motion under the abuse of discretion standard. *State v. Flegel,* 485 N.W.2d 210, 213 (S.D.1992). Unless such discretion is exercised to an end or purpose

---

1. "It is a petty offense for any person to drive any vehicle upon a highway with any object or

gadget dangling between the view of the driver and the windshield of the vehicle."

not justified by and clearly against reason and evidence, the trial court's decision should stand. *State v. Almond,* 511 N.W.2d 572, 574 (S.D.1994).

■ Both the Fourth Amendment of the United States Constitution and Art. VI, § 11 of the South Dakota Constitution protect against "unreasonable searches and seizures." These provisions guarantee an individual's right to personal security free from arbitrary law enforcement interference. *United States v. Brignoni–Ponce,* 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975). As noted by the trial court and conceded by Ramirez, Trooper Swenson had probable cause under SDCL 32–15–6 to stop Ramirez's vehicle because a small, cardboard-thin air freshener was hanging from the rearview mirror. Thereafter, Ramirez was taken to the patrol car and issued a warning citation. For this purpose, law enforcement intervention was minimally intrusive and a reasonable exercise in the public interest. *See United States v. Cummins,* 920 F.2d 498, 500 (8th Cir.1990), *cert. denied,* 502 U.S. 962, 112 S.Ct. 428, 116 L.Ed.2d 448, 449 (1991); SDCL 23–1A–7. After Ramirez failed to present proof of registration, Trooper Swenson, in accord with standard procedure, radioed in for verification.

■ We first determine whether Ramirez was illegally detained beyond what was necessary for this stop. Law enforcement officers are entitled to diligently investigate to verify a vehicle's registration. *United States v. Sharpe,* 470 U.S. 675, 686, 105 S.Ct. 1568, 1575, 84 L.Ed.2d 605 (1985). A brief delay while running a computer check on a vehicle registration or a driver's license via radio is permissible. *State v. Hewey,* 144 Vt. 10, 471 A.2d 236 (1983); 4 Wayne R. LaFave, SEARCH AND SEIZURE § 10.8(a), at 64 (2d ed. 1987). Failure to possess a valid registration is a petty offense. SDCL 32–5–91. A law enforcement officer is entitled to briefly detain a petty offender pursuant to SDCL 23–1A–7. The record contains no indication that Ramirez was unduly detained beyond the time necessary to verify registration. So we conclude that Trooper Swenson diligently performed the check and released Ramirez just after registration was verified. Our function does not include indulging "in unrealistic second-guessing" when nothing pre-

sented by Ramirez indicates that the registration check was improper or too long in duration. *Sharpe,* 470 U.S. at 686, 105 S.Ct. at 1575.

■ Trooper Swenson noticed that Ramirez appeared overly nervous, so he asked for consent to search the car.

The results of the initial stop may arouse further suspicion or may dispel the questions in the officer's mind. If the latter is the case, the stop may go no further and the detained individual must be free to go. If, on the contrary, the officer's suspicions are confirmed or are further aroused, the stop may be prolonged and the scope enlarged as required by the circumstances.

*State v. Watson,* 165 Conn. 577, 345 A.2d 532, 537 (1973). Upon first giving consent to search, Ramirez and his companion were ordered into the back seat of the patrol car; they were given no option and were not free to leave. Unquestionably, therefore, they were "in custody" or "seized," and the trial court so found. *State v. Krebs,* 504 N.W.2d 580, 584 (S.D.1993). At this point Ramirez changed his mind and withdrew consent.

When this occurred, there truly was no need for the two to remain in the patrol car. Nevertheless, as recognized in *Pennsylvania v. Mimms,* 434 U.S. 106, 111, 98 S.Ct. 330, 333, 54 L.Ed.2d 331 (1977), once the authorities have opted to briefly detain a driver (here, to await confirmation of registration), the only question is where the driver will spend the waiting period. Trooper Swenson's insistence that the driver and his passenger stay in the patrol car is not a "serious intrusion upon the sanctity of the person," and hardly rises to the level of a "petty indignity." *Id.* (quoting *Terry v. Ohio,* 392 U.S. 1, 17, 88 S.Ct. 1868, 1877, 20 L.Ed.2d 889 (1968)). Their placement in the back seat, while convenient for Trooper Swenson's use of the tape recorder, was at most a mere inconvenience to Ramirez and Hartfield. Hence, Ramirez was not illegally detained.

Lacking consent for an interior search of the car, the trooper opted to conduct what he termed a "plain view" search. "Plain view" was a misnomer. *See Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); *State v. Flores,* 305

So.2d 292 (Fla.App.1974); 1 Wayne R. La-Fave, SEARCH AND SEIZURE § 2.5(c), at 450 (2d ed. 1987). Ramirez argues that if the "plain view" search was improper, any information obtained from the recording is inadmissible as "fruits of the poisonous tree." The search did not beget the incriminating statements. Rather they were the result of Swenson's absence from the car. As Swenson discovered nothing during the so-called "plain view" search, we need not tarry over the officer's actions at Ramirez's car. The search occurred while the officer was legitimately awaiting radio confirmation of registration.

■ While Trooper Swenson was at Ramirez's car and awaiting radio confirmation, an undisclosed tape player secretly recorded the conversation between Ramirez and Hartfield. Ramirez asserts that this was in violation of his privacy rights.[2] Perhaps he had a subjective expectation of privacy during his dialogue in the back of the patrol car, otherwise he presumably would not have made the incriminating statement. *State v. Lowther*, 434 N.W.2d 747, 754 (S.D.1989); *People v. Crowson*, 33 Cal.3d 623, 190 Cal.Rptr. 165, 168, 660 P.2d 389, 392 (1983). Whether he possessed a legitimate or reasonable expectation of privacy, on the other hand, is ultimately a matter of common sense and practical judgment. *Krebs*, 504 N.W.2d at 586; *Crowson*, 660 P.2d at 392. Such expectation must be one that society is prepared to recognize as reasonable. *Lowther*, 434 N.W.2d at 754; *Crowson*, 660 P.2d at 393; *Katz v. United States*, 389 U.S. 347, 361, 88 S.Ct. 507, 516, 19 L.Ed.2d 576 (1967) (Harlan, J., concurring).

A highway patrol officer's vehicle often serves as an office or even a temporary jail. "The general public has no reason to frequent the back seat of a patrol car, or to believe that it is a sanctuary for private discussion." *United States v. Clark*, 22 F.3d 799, 802 (8th Cir.1994). Though this is a question of first impression in South Dakota, we note that other jurisdictions have found no legitimate expectation of privacy in a police vehicle. James G. Carr, THE LAW OF ELECTRONIC SURVEILLANCE § 3.2(b)(1) (1995); *Clark*, 22 F.3d at 801–02; *United States v. McKinnon*, 985 F.2d 525 (11th Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 130, 126 L.Ed.2d 94 (1993); *People v. Seaton*, 146 Cal.App.3d 67, 194 Cal.Rptr. 33, 41–42 (1983); *Brown v. State*, 349 So.2d 1196 (Fla.App. 1977), *cert. denied*, 434 U.S. 1078, 98 S.Ct. 1271, 55 L.Ed.2d 785 (1978); *State v. Hussey*, 469 So.2d 346, 350–51 (La.App.1985); *People v. Marland*, 135 Mich.App. 297, 355 N.W.2d 378, 383–84 (1984); *State v. Lucero*, 96 N.M. 126, 628 P.2d 696 (App.1981); *K.F. v. State*, 797 P.2d 1006 (Okla.Crim.1990); *State v. Wischnofske*, 129 Or.App. 231, 878 P.2d 1130 (1994).

While secretly tape recording personal conversations in a police car may offend individual sensibilities, we nonetheless hold that Ramirez had no objective reason to expect that his conversation with Hartfield while both were in custody in the back of the patrol car would be afforded any reasonable expectation of privacy. The taped statements, therefore, are admissible as evidence. *State v. Smith*, 641 So.2d 849, 851–52 (Fla.1994).

Affirmed.

MILLER, C.J., and AMUNDSON and GILBERTSON, JJ., concur.

SABERS, J., dissents.

SABERS, Justice (dissenting).

What happened to Victor Ramirez that February 22, 1994 afternoon shouldn't happen to a dog. It didn't. It shouldn't happen to someone traveling in the State of South Dakota either, but it did.

Victor is no Rhodes scholar. Like most of us, he's a common, ordinary person. He and his bride-to-be were going to Deadwood to get married. He made mistakes, at least two: (1) He had some cocaine hidden in the front seat of his car, presumably to enhance the wedding rather than to finance it,[1] and (2) he drove through Officer Swenson's territory with an air freshener dangling from his rear view mirror.

---

2. Ramirez does not allege his taped statement was somehow coerced from him. See *State v. Kaiser*, 504 N.W.2d 96 (S.D.1993).

1. I do not condone possession or use of cocaine for any reason except appropriate medical purposes.

Obviously Victor never counted on spending the afternoon with Officer Swenson, but Officer Swenson did. Whether it was Victor's appearance, his nervousness, the dangling object, mere suspicion or quota mentality, or a combination of these, it is clear that this officer "was going to get his man." What difference does it really make if he walks all over the Constitution in the process?

Officer Swenson did have the right to stop this vehicle and issue a citation for the dangling object. SDCL 32–15–6. He also had the right to check out the registration of the vehicle, which he did. Swenson claims he did his "plain view" search *while* he was waiting for the registration check to come back. Once he did those things, he had no right to require Victor and his bride-to-be to remain in the back seat of his patrol vehicle. Officer Swenson admits they were placed in custody. They were not free to go. They were compelled to remain in the back seat of (Officer Swenson's Jail) the patrol car.

Officer Swenson's conduct merits further scrutiny:

1. Operating on a bare suspicion or hunch, without any probable cause, Officer Swenson asked Ramirez about drugs in the car. Apparently sensing Ramirez's nervousness, he asked Ramirez if he could search his car. Ramirez initially consented but then withdrew his consent before Officer Swenson could start the search. *See State v. Peterson,* 407 N.W.2d 221, 223 (S.D.1987) (officer who *has* probable cause to believe contraband or other evidence of a crime is in a vehicle may search without a warrant). Here, there was *no* probable cause.

2. Then while Ramirez and his companion are in the back seat, without probable cause, Officer Swenson returns to the Ramirez vehicle, presumably to conduct a plain view search. It doesn't bother him that, as even the majority acknowledges, there is no such thing.[2] In *Coolidge v. New Hampshire,* 403 U.S. 443, 466, 91 S.Ct. 2022, 2038, 29 L.Ed.2d 564 (1971), the United States Supreme Court stated:

> What the "plain view" cases have in common is that the police officer in each of them had a prior justification for an intrusion in the course of which he came *inadvertently* across a piece of evidence incriminating the accused.
>
> *   *   *   *   *   *
>
> Of course, the extension of the original justification is legitimate only where it is immediately apparent to the police that they have evidence before them; *the "plain view" doctrine may not be used to extend a general exploratory search from one object to another until something incriminating at last emerges.*

*Id.* (citation omitted) (emphasis added). Here, Officer Swenson did not see anything "immediately apparent" when he first stopped the vehicle. He did not "inadvertently" discover some evidence; rather he conducted a second "general exploratory search" after he placed Ramirez and Hartfield in the back seat of the patrol car. *Id.* Even if this were proper, it would not include entering the car to pick up a small seed, thought to be marijuana, but which turned out to be a sesame seed probably from a Big Mac. *See Id.*

3. Among the equipment furnished Officers of the South Dakota Highway Patrol is a tape recording machine. Most officers use this device to record important information and conversations to prove proper procedures were followed such as *Miranda* and Implied consent warnings. Not Officer Swenson. He not only conveniently omits to turn on the machine during the time when *his* conduct might be in question, he secretly activates it to record the conversation in the

---

2. In *Peterson,* 407 N.W.2d at 227 (Sabers, J. dissenting), I noted:

There is no such thing as a plain view search, only a plain view seizure. In other words, under certain circumstances, an officer can seize that which is in plain view. He cannot require people to remove themselves from a vehicle so that he can conduct a "plain view search or seizure" in and around the driver and passenger seat, the console, the glove compartment.
*Id.*
As noted by Justice Henderson's dissent in the same case:
[The plain view doctrine] does not arise from any officer thrusting all or part of his body into the vehicle, and then proceeding to have a "plain view" look.
*Id.* at 226 (Henderson, J. dissenting).

back seat of the patrol car while he's searching Ramirez's car. He claims he did it for his safety—and not to compel or elicit an incriminating response. In my view, that's why he placed them in custody and that's why he secretly activated the recording device.[3]

4. It's also common practice for state troopers to advise people of their *Miranda* rights when they place them in custody. Not Officer Swenson. Officer Swenson not only placed them in custody, and secretly activated the recording machine, but failed to advise them of their right to remain silent. His search of their car under these circumstances was bound to compel a response from them which he was secretly taping. In *State v. Cody*, 293 N.W.2d 440, 447 (S.D.1980), we stated:

> [T]he term "interrogation" under *Miranda* refers not only to express questioning, but also to any words or *actions* on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect.

*Id.* (emphasis added) (citing *Rhode Island v. Innis*, 446 U.S. 291, 301, 100 S.Ct. 1682, 1689, 64 L.Ed.2d 297 (1980)).

The majority states: "The search did not beget the incriminating statements. Rather they were the result of Swenson's absence from the car." Because Officer Swenson did not discover any physical evidence during his "plain view" search, the majority states "we need not tarry over the officer's actions at Ramirez's car." "A *practice* that the police should know is reasonably likely to evoke an incriminating response from a suspect thus amounts to interrogation."[4] *Innis*, 446 U.S. at 301, 100 S.Ct. at 1689 (emphasis added). Officer Swenson's actions should be scrutinized because they constituted an "interrogation" under *Miranda;* since the *Miranda* warnings were not given and Ramirez was in custody, Ramirez's constitutional rights were violated. *Cody*, 293 N.W.2d at 447. Conducting a "plain view" search like the one here, which concededly does not exist, then taping conversations (the reactions) of those whose vehicle is subjected to this search is not "normally attendant to arrest and custody[,]" nor does it appear to be proper procedure for a stop for a dangling air freshener. *Innis*, 446 U.S. at 301, 100 S.Ct. at 1689.

In oral argument, I asked Assistant Attorney General Todd Love whether this type of activity was standard operating procedure for the South Dakota Highway Patrol. He honestly acknowledged that he didn't know. I don't know either, but I respectfully submit that the appropriate authorities with the South Dakota Patrol decide whether this type of activity should be 1) Policy; or 2) prohibited—not only in theory, but in practice.

The cases cited by the majority don't control this situation because they are generally distinguishable.[5] If we were to take the

---

**3.** Officer Swenson gave these reasons for turning on the tape recorder:

> One [reason] is for my safety that they're not sticking stuff in my seats. Another is that in *consent* searches we have been taught that people like to say they are trying to get out of the back seat of the patrol car by yelling at you trying to get out of the car. The tape recorder is going to dispute that if they really weren't doing that.

(Emphasis added). Swenson testified about the proper procedure in *consent* searches at the preliminary hearing. However, here, Ramirez had clearly withdrawn his consent to a search.

**4.** Officer Swenson used this procedure before. He testified that he has obtained information of criminal activity by having his tape recorder turned on while he is outside of his vehicle after placing people inside.

In *Innis*, 446 U.S. at 301 n. 7, 100 S.Ct. at 1690 n. 7, the Court noted the intent of the police "may well have a bearing on whether the police should have known that their words or actions were reasonably likely to evoke an incriminating response."

**5.** The majority cites several cases for the proposition that defendants do not have a reasonable expectation of privacy in a police car. *See Clark*, 22 F.3d at 800, *McKinnon*, 985 F.2d at 526, *Seaton*, 194 Cal.Rptr. at 35, and *Hussey*, 469 So.2d at 348. In those cases, the statements were obtained by consensual search or by search incident to arrest or probable cause, and *Miranda* was not raised as an objection to admission of the secretly taped conversations.

In *Hussey*, 469 So.2d at 348 n. 2, the court noted:

> [W]e cannot approve or encourage the clandestine taping of every conversation under every imaginable circumstance in the police car and not in the presence of the officer. Under *some* circumstances, the conviction of a defendant *solely* on the basis of evidence directly derived

majority's rationale to its logical conclusion, then any recorded statements made by suspects in jails or police cars could be admissible even though a custodial interrogation occurred without a *Miranda* warning.

Now I ask you—would Officer Swenson do these things to someone wearing a suit? Would he do this to you or to me? Would he ask to search your car without probable cause or any right whatsoever to do so? Would you feel compelled to consent? Would he place you and your companion in custody in the back seat of his patrol car? While searching your car? With a secret tape recording device activated? Without advising you of your Miranda rights?

I don't think so either. It wouldn't be fair or legally right. But we're common, ordinary people, like Victor Ramirez. Therefore, it is obvious that he did not get due process, equal protection or any of the basic rights guaranteed to him by the Constitution of the State of South Dakota and of the United States.

from such an illegal and unconstitutional recording would not stand judicial scrutiny under *Wong Sun* [*v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963)].
*Id.* Here, Ramirez was stopped a second time only because of the secretly recorded comments. Officer Swenson had no other reason to stop him again.
    In *Hussey*, 469 So.2d at 348, cited by the majority, a defendant was arrested for DWI and the defendant requested an inventory of the items in his car before impoundment. His comments about stolen items were secretly recorded while he sat in the rear seat of the patrol car. Since the defendants were already arrested, handcuffed, and placed in the closed rear seat area of the officer's car, "their expectation of privacy would not have been recognized as reasonable and justifiable[.]" *Id.* at 351. Defendants' convictions for possession of stolen property were upheld because police had additional independently obtained evidence which was not tainted. *Id.* (citing *U.S. v. Crews*, 445 U.S. 463, 472, 100 S.Ct. 1244, 1250, 63 L.Ed.2d 537 (1980)).