STATE of Minnesota, Respondent,

v.

Aaron Timothy TORGRIMSON,
Appellant.

No. C2–01–905.

Court of Appeals of Minnesota.

Jan. 2, 2002.

Mike Hatch, Attorney General, St. Paul, MN; and Steven M. Tallen, Maple Grove City Attorney, Tallen Baertschi, Minneapolis, MN, for respondent.

Robert D. Miller, Robert D. Miller and Associates, Minneapolis, MN, for appellant.

Considered and decided by KLAPHAKE, Presiding Judge, SCHUMACHER, Judge, and PETERSON, Judge.

## OPINION

SCHUMACHER, Judge.

Appellant Aaron Timothy Torgrimson challenges the district court's pretrial evidentiary ruling denying his motion to suppress surreptitiously taped statements he made while talking with another suspect in the back seat of a police vehicle. Torgrimson contends that (1) the surreptitious taping violates his Fourth Amendment rights, and (2) failure to suppress the statements violates Minn.Stat. § 626A.04 (2000). We affirm.

## FACTS

On December 3, 2000, State Trooper Wade Erickson was dispatched to investigate a report of an intoxicated driver traveling westbound on Interstate 94. Erickson observed a moving vehicle near the reported area with a license plate number matching the number he received from the dispatch. Erickson activated his emergency lights, and the driver pulled over and stopped the vehicle. Erickson approached the driver's side of the vehicle and identified the driver as Eric Charles Hicks and the front-seat passenger as Torgrimson.

Erickson smelled the odor of alcohol emanating from the vehicle and noticed that Hicks had glassy and watery eyes. Hicks agreed to take a breath test and was placed in the back seat of Erickson's squad car. Erickson then approached the passenger side of the vehicle, opened the passenger door, and saw the top of a bottle of "Captain Morgan," an alcoholic beverage, sticking out of a McDonald's bag on the floor near the passenger seat. Erickson also observed that Torgrimson's speech was slurred, that he smelled strongly of alcohol, and that his eyes were bloodshot, glassy, and watery. Torgrimson exited the vehicle and Erickson observed that Torgrimson was unsteady on his feet.

Torgrimson was placed in the back seat of the squad car with Hicks. Erickson then turned on the micro-cassette tape recorder located inside the vehicle while he stepped outside to talk with the party who initially reported the incident. At this point, Torgrimson and Hicks engaged in a conversation in which both stated that Torgrimson was originally driving the vehicle, that they had switched places shortly before being pulled over, and that they should just stick to their story that Hicks was driving because the police could not prove otherwise.

Torgrimson was ultimately arrested and charged with driving while under the influence of alcohol. Thereafter, Torgrimson moved to suppress the taped statements. The district court denied the motion. Torgrimson waived his right to a jury trial and

submitted the case on stipulated facts pursuant to *State v. Lothenbach*, 296 N.W.2d 854 (Minn.1980). The district court found Torgrimson guilty of driving while under the influence. This appeal followed.

## ISSUE

1. Does the surreptitious taping of statements made by one suspect to another suspect while confined in the back seat of a police vehicle violate the individual's Fourth Amendment rights?

2. Does the admission of surreptitiously taped statements made while a suspect was confined in the back seat of a police vehicle violate Minn.Stat. § 626A.04 (2000)?

## ANALYSIS

■ 1. Torgrimson contends that the district court erred by failing to suppress surreptitiously taped statements he made during a conversation with Hicks in the back seat of a police vehicle. When reviewing a pretrial order on a motion to suppress evidence where the facts are not in dispute and the district court's decision is a question of law, this court determines as a matter of law whether the evidence needs to be suppressed. *State v. Othoudt*, 482 N.W.2d 218, 221 (Minn.1992).

■ Torgrimson argues that the surreptitious taping of the statements violates his Fourth Amendment rights. The Fourth Amendment to the United States Constitution and article I, section 10 of the Minnesota Constitution protect the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." These protections are for people, not places. *Katz v. United States*, 389 U.S. 347, 351, 88 S.Ct. 507, 511, 19 L.Ed.2d 576 (1967). To obtain Fourth Amendment protection, an individual must have an actual expectation of privacy and that expectation must

be one that society is prepared to recognize as reasonable. *Id.* at 361, 88 S.Ct. at 516 (Harlan, J., concurring).

Whether the surreptitious taping of statements made in the back seat of a police vehicle violates the Fourth Amendment is an issue of first impression in Minnesota. *Cf. State v. Edrozo*, 578 N.W.2d 719, 723 n. 6 (Minn.1998) (noting, while holding that surreptitious taping in back seat of squad car was not custodial interrogation, that parties did not raise Fourth Amendment issue). Federal jurisdictions that have considered the issue, however, have concluded that such surreptitious taping does not violate a suspect's rights. In *United States v. Clark*, 22 F.3d 799 (8th Cir.1994), the Eighth Circuit Court of Appeals found that society is not prepared to recognize a reasonable expectation of privacy when a person is seated in the back seat of a police vehicle:

A marked police car is owned and operated by the state for the express purpose of ferreting out crime. It is essentially the trooper's office, and is frequently used as a temporary jail for housing and transporting arrestees and suspects. The general public has no reason to frequent the back seat of a patrol car, or to believe that it is a sanctuary for private discussions. A police car is not the kind of public place, like a phone booth where a person should be able to reasonably expect that his conversation will not be monitored. In other words, allowing police to record statements made by individuals seated inside a patrol car does not intrude upon privacy and freedom to such an extent that it could be regarded as inconsistent with the aims of a free and open society.

*Id.* at 801–02 (citation omitted).

Similarly, the Eleventh Circuit Court of Appeals has stated:

McKinnon argues that he exhibited a subjective expectation of privacy because he could not exit the police car, did not consent to the surreptitious recording, was out of the officers' range for hearing his conversations, and was not under arrest. Furthermore, McKinnon argues that society is willing to recognize this subjective expectation of privacy because the government violated his rights because it did not have probable cause to conduct this secret search. Finally, McKinnon argues that the front seat of a police car is equivalent to the officer's office, but the back seat is the office of the arrestee.

The government counters that no expectation of privacy exists in a marked police car, which is tantamount to a police officer's office. Furthermore, the back seat of a police car is equivalent to a jail, and no reasonable expectation of privacy exists in a jail cell. Additionally, the government argues that McKinnon could hear police radio transmissions while in the back of the police car; hence, no reasonable or justifiable expectation of privacy existed.

Though we have no controlling authority in this circuit, one federal district court and several state courts have held that no reasonable expectation of privacy exists in the back seat area of a police car. * * * [W]e hold that McKinnon did not have a reasonable or justifiable expectation of privacy for conversations he held while seated in the back seat area of a police car.

*United States v. McKinnon*, 985 F.2d 525, 527–28 (11th Cir.1993) (citations omitted).

Most recently, the Tenth Circuit Court of Appeals has stated:

We conclude that under Title III or the Fourth Amendment, society is not prepared to recognize an expectation that communications in a patrol car, under facts presented here, are not subject to interception.

Turner argues that his expectation of privacy is reasonable because of the circumstances: he was not in custody or being threatened with arrest, and the officer deliberately represented the car as a safe haven. We are not persuaded that either consideration is controlling. A police car is an official vehicle, used here for law enforcement purposes. We agree with the Eleventh Circuit in *McKinnon* that whether an individual is in custody does not materially affect an expectation of privacy in a police car. Furthermore, in addition to the status of the police vehicle, the practical realities of the situation should be apparent to occupants. Patrol cars bristle with electronics, including microphones to a dispatcher, possible video recording with audio pickup, and other electronic and recording devices.

*United States v. Turner*, 209 F.3d 1198, 1200–01 (10th Cir.2000) (footnotes omitted) (citations omitted), *cert. denied*, 531 U.S. 887, 121 S.Ct. 208, 148 L.Ed.2d 146 (2000).

In addition to the federal caselaw, several state jurisdictions have spoken on the issue. *See People v. Newton*, 42 Cal. App.3d 292, 116 Cal.Rptr. 690, 693 (1974) (no reasonable and justifiable expectation of privacy when conversation recorded while suspects under arrest and in police custody in patrol car); *People v. Palmer*, 888 P.2d 348, 350–51 (Colo.Ct.App.1994) (no justifiable expectation of privacy while in back seat of police car); *State v. Smith*, 641 So.2d 849, 852 (Fla.1994) (no reasonable expectation of privacy in police car); *State v. Timley*, 25 Kan.App.2d 779, 975 P.2d 264, 268 (1998) (no reasonable expectation of privacy in statements made to companion while both seated in police car); *State v. Hussey*, 469 So.2d 346, 350–51 (La.Ct.App.1985) (no reasonable expecta-

tion of privacy in back seat of police car after vehicle stopped on DWI suspicion); *People v. Marland,* 135 Mich.App. 297, 355 N.W.2d 378, 383–84 (1984) (surreptitious tape recording of conversation while seated in police car admissible); *State v. Lucero,* 96 N.M. 126, 628 P.2d 696, 698 (Ct.App. 1981) (person confined in police vehicle has no reasonable expectation that conversation will be private); *K.F. v. State,* 797 P.2d 1006, 1007–08 (Okla.Crim.App.1990) (no reasonable expectation of privacy in police vehicle); *State v. Wischnofske,* 129 Or.App. 231, 878 P.2d 1130, 1134 (1994) (society not prepared to recognize reasonable expectation of privacy regarding statements made while seated inside patrol car); *State v. Ramirez,* 535 N.W.2d 847, 850 (S.D.1995) (suspect had no objective reason to expect his conversation with another while both were in custody in back seat of patrol car would be afforded reasonable expectation of privacy).

Torgrimson argues that he had a subjective expectation of privacy while in the squad car. Even if he did have this personal expectation, the controlling issue is whether society is prepared to accept the expectation as reasonable. Torgrimson cites *Katz* in support of his argument that society will accept his expectation. Unlike the facts here, however, *Katz* involved surreptitious electronic recording of a suspect's conversations while he talked on the telephone in a public telephone booth. *Katz,* 389 U.S. at 348, 88 S.Ct. at 509. The United States Supreme Court stated:

> Because of the misleading way the issues have been formulated, the parties have attached great significance to the characterization of the telephone booth from which the petitioner placed his calls. The petitioner has strenuously argued that the booth was a "constitutionally protected area." The Government has maintained with equal vigor that it was not. But this effort to decide whether or not a given "area," viewed in the abstract, is "constitutionally protected" deflects attention from the problem presented by this case. For the Fourth Amendment protects people, not places. What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection. But what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected.

> The Government stresses the fact that the telephone booth from which the petitioner made his calls was constructed partly of glass, so that he was as visible after he entered it as he would have been if he had remained outside. But what he sought to exclude when he entered the booth was not the intruding eye—it was the uninvited ear. He did not shed his right to do so simply because he made his calls from a place where he might be seen. No less than an individual in a business office, in a friend's apartment, or in a taxicab, a person in a telephone booth may rely upon the protection of the Fourth Amendment. One who occupies it, shuts the door behind him, and pays the toll that permits him to place a call is surely entitled to assume that the words he utters into the mouthpiece will not be broadcast to the world. To read the Constitution more narrowly is to ignore the vital role that the public telephone has come to play in private communication.

*Id.* at 351–52, 88 S.Ct. at 511–12 (citations omitted). Because *Katz* involved the use of a public telephone booth, as opposed to a government-owned police vehicle used for police business, *Katz* is clearly distinguishable from the case before us.

■ We find persuasive the case law from the jurisdictions that have previously decided this issue. After taking careful note that the Fourth Amendment protects people and not places, we are not prepared to accept the proposition that there is a reasonable expectation of privacy inside a police vehicle. A phone booth is fully accessible to the public as a place to engage in private conversations. A police vehicle, however, is not freely accessible. It is owned and operated by the state and/or the local government. It is used for the purpose of responding to and preventing crime. For all practical purposes, the vehicle serves as the police officer's office. Further, in some instances, the back seat of the vehicle can act as the equivalent of a temporary jail cell. We conclude that the surreptitious taping of conversations made inside a police vehicle does not violate the Fourth Amendment. The district court did not err by failing to suppress the statements.

2. Torgrimson also contends that the district court's failure to suppress the surreptitiously taped statements violated Minn.Stat. § 626A.04 (2000). The statute provides:

> Whenever any wire, oral, or electronic communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any trial, hearing, or other proceeding in or before any court or grand jury if the disclosure of that information would be in violation of this chapter.

Minn.Stat. § 626A.04. Oral communication is defined as follows:

> "Oral communication" means any oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation, but the term does not include any electronic communication.

Minn.Stat. § 626A.01, subd. 4 (2000).

■ Based on this language, the failure to suppress the statements would violate the statute only if Torgrimson had a justified expectation of privacy. For the same reasons discussed regarding the Fourth Amendment issue, Torgrimson was not justified in expecting privacy while in the back seat of a police vehicle.

### DECISION

The surreptitious taping of statements made while in the back seat of a police vehicle does not infringe on any reasonable expectation of privacy and therefore does not violate an individual's Fourth Amendment rights. Also, because an expectation of privacy is not justified in such circumstances, the failure to suppress the surreptitiously taped statements does not violate Minn.Stat. § 626A.04 (2000). The district court did not err in its pretrial evidentiary ruling.

**Affirmed.**