OPINION
Dion Wynter appeals from a judgment of the Miami County Court of Common Pleas, which, following his entry of a plea of no contest, found him guilty of possessing drugs in violation of R.C.2925.11(A),(C)(3)(e) and sentenced him to a three-year term of imprisonment. Prior to pleading no contest, Wynter had filed a motion to suppress that the trial court overruled. It is that action by the trial court that prompts this appeal.
The evidence presented at the July 14, 1997 suppression hearing established the following:
On January 10, 1997, Trooper J.D. Myers of the Ohio State Highway Patrol, Dayton Post was on duty in Miami County. At approximately 11:20 a.m., he learned from his supervisor, Sergeant S.O. Smart, that, earlier in the morning, a sheriff's deputy in Butler County had stopped a purple Volkswagen Cabrio with dark windows and a California license plate. Trooper Myers was told that the deputy had made a cursory search of the vehicle and that, in the absence of a canine handler, he had been unable to investigate the suspicious circumstance of the immovable rear and passenger seats and had thus permitted the vehicle to leave. As Trooper Myers observed traffic and checked vehicle speeds along Interstate Highway 75, he also kept watch for the purple Volkswagon and observed it make a sudden unsignaled lane change to the right and then slow to a speed below the speed limit. After the vehicle had passed Trooper Myers, it pulled onto an exit ramp without signaling the turn. Trooper Myers followed the vehicle and saw it move left of the center line and stop at a green traffic light. The vehicle turned right onto U.S. Route 36 and moved into a safety lane and then back into the normal left eastbound lane. After the vehicle had stopped at a red light and hesitated before pulling forward, Trooper Myers signaled a traffic stop by activating his overhead lights, which automatically turned on the interior video camera system. He also relayed information on the traffic stop and the vehicle's license plate to the nearest patrol post. Trooper Myers then turned on his body microphone. Before the vehicle came to a stop in a Wendy's parking lot, Trooper Myers observed at least two silhouettes in the vehicle making excessive movements, including the passenger's disappearance from view.
Trooper Myers ordered the driver, Sheila Manuel, to exit the vehicle. Upon his request, Manuel handed him a California driver's license. Manuel also informed him that she had just been stopped and handed him another officer's business card and a yellow piece of paper. Trooper Myers asked her whether she owned the vehicle and if she had any paperwork for it, from where she had been traveling, and where she was going. Trooper Myers performed a brief weapons search of Manuel's person and escorted her to the back seat of the patrol car. Manuel informed Trooper Myers that she had borrowed the vehicle from a friend, that she had come from Pomona, California, that she was traveling to her grandmother's funeral in Detroit, Michigan, and that the passenger was her friend. When Trooper Myers informed Manuel that she had been stopped for a lane-change violation, she told him that the other officer had stopped her for the same violation. During this conversation, Trooper Myers also kept an eye on the passenger who had been moving around in the vehicle.
Trooper Myers then approached the passenger's side of the vehicle and saw Wynter trying to get out of the car. Trooper Myers told Wynter to stay inside and asked him some questions about his destination. Wynter said that he was accompanying Manuel to her grandmother's funeral in Detroit. Wynter complied with Trooper Myers' request for identification by handing him what Trooper Myers observed to be a fictitious social security card. As Wynter reached over to the driver's door pocket for paperwork on the vehicle, Trooper Myers noticed that the vehicle had neither a glove compartment nor a center console compartment. Trooper Myers then walked toward his patrol car to look over the paperwork on the vehicle. Trooper Charles E. Wright, a canine handler, and his narcotics-sniffing canine then appeared at the scene.
As Trooper Myers started to radio in Manuel's driver's license number and Wynter's social security number, Trooper Wright and the dog walked around the exterior of the vehicle. Trooper Myers watched as the dog "alerted very aggressively to the right rear of the vehicle." The dog also responded aggressively to the bottom of a car door. Trooper Myers then advised Manuel of herMiranda rights and told her that she was not under arrest. Manuel stated that she understood her rights. Trooper Myers again asked her who owned the car, whether it had been stolen, and why the canine had alerted to the odor of narcotics. In response to the question about narcotics, Manuel "just looked away from [Trooper Myers] and didn't answer." When Sergeant Smart arrived on the scene, Trooper Myers explained the situation and they asked Wynter to exit the vehicle. Trooper Myers read Wynter his Miranda
rights, which Wynter stated that he understood. Trooper Myers explained to Wynter that the canine had alerted to the odor of narcotics and conducted a pat-down search for weapons on Wynter's person. Trooper Myers informed both Manuel and Wynter that they were not under arrest but that they were being detained and were not free to leave. He also explained that, because the canine had signaled the odor of narcotics, they would need to search the vehicle. Manuel drove the vehicle to a patrol technician's garage about one-half mile away for the search, and Trooper Myers transported Wynter to the garage. As Wynter and Manuel sat in the back seat of Trooper Myers' patrol car during the vehicle search, the camera system recorded their conversation. After approximately forty pounds of marijuana were found beneath a false floor under the seats, Wynter and Manuel were placed under arrest. Trooper Myers approached Manuel and, while she sat in the patrol car, told her what they had found, asked her about her knowledge of the narcotics and her role in the delivery, and requested that she assist in making a controlled delivery. Manuel initially agreed, but asked to confer with Wynter. Outside of the patrol car, Trooper Myers asked Wynter to do the same, but he refused. Wynter then returned to the back seat of the patrol car, and he and Manuel decided not to take part in a controlled delivery. Wynter and Manuel were then transported to the Miami County Jail.
On January 28, 1997, Wynter was indicted for obtaining, possessing, or using marijuana, a Schedule I controlled substance, in violation of R.C. 2925.11(A),(C)(3)(e), and for possessing or having control of criminal tools, in violation of R.C. 2923.24(A). On March 14, 1997, Wynter filed a motion to suppress all physical evidence obtained as a result of the search, statements that he had made, and evidence of a taped conversation between Wynter and co-defendant, Sheila Manual. On April 16, 1997, after having heard the testimony of Trooper Myers, Trooper Wright, Manuel, and Wynter and viewing Wynter and Manuel's videotaped conversation, the trial court overruled Wynter's motion. On May 7, 1997, Wynter entered a plea of no contest to one count of possessing drugs in violation of R.C. 2925.11(A),(C)(3)(e), and the state dismissed the possessing criminal tools charge. On June 19, 1997, the trial court imposed sentence.
Wynter raises two assignments of error on appeal.
 I. THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO SUPPRESS AND THAT TROOPER MYERS IMPROPERLY DETAINED APPELLANT BEYOND THE SCOPE NECESSARY TO EFFECTUATE THE PURPOSE OF THE INITIAL STOP.
Wynter contends that the trial court should have ordered the suppression of evidence obtained as a result of the search of the vehicle because "the detention was unreasonably long and the investigation expanded beyond the scope necessary to effectuate the purpose of the initial stop."
"[S]topping an automobile and detaining its occupants constitute a `seizure' within the meaning of [the Fourth and Fourteenth] Amendments." Delaware v. Prouse (1979), 440 U.S. 648,653. Making a traffic stop is reasonable if the officer has probable cause to believe that a traffic violation occurred, regardless of whether he has any ulterior motives for stopping the vehicle. Whren v. U.S. (1996), 116 S.Ct. 1769, 1772, 1774; Daytonv. Erickson (1996), 76 Ohio St.3d 3, 11-12. The vehicle's occupants may be briefly detained for limited questioning if the officer has a reasonable and articulable suspicion of criminal activity. U.S. v. Brignoni-Ponce (1975), 422 U.S. 873, 880-881
(applying the standards for valid investigative detentions set forth in Terry v. Ohio (1968), 392 U.S. 1 to traffic stops). The officer may detain the vehicle for a period of time reasonably necessary to confirm or dispel his suspicions of criminal activity. U.S. v. Sharpe (1985), 470 U.S. 675, 685-686; State v.Myers (1990), 63 Ohio App.3d 765, 771. Once the officer is satisfied that no criminal activity had occurred, then the vehicle's occupants must be released. Myers,63 Ohio App.3d at 771.
When we review a trial court's ruling on a motion to suppress evidence, we accept the trial court's factual findings if they were supported by competent, credible evidence. State v. Terry
(Feb. 28, 1997), Montgomery App. No. 15796, unreported. We are obligated "to review findings of historical fact only for clear error and to give due weight to inferences drawn from those facts by resident judges and local law enforcement officers." Ornelasv. U.S. (1996), 116 S.Ct. 1657, 1663. The trial court's legal determinations of probable cause and reasonable suspicion, however, are subject to de novo review. Id. at 1663.
The trial court found that Trooper Myers had probable cause to make the initial traffic stop based on his observations of the vehicle's "failure to drive in marked lanes and improper lane change." We agree that Trooper Myers lawfully stopped the vehicle driven by Manuel upon observing the traffic violations. Furthermore, the trial court correctly determined that Trooper Myers' knowledge of the vehicle's prior stop and that the sheriff's deputy had suspected it of transporting narcotics was irrelevant to the validity of the traffic stop. See Whren,116 S.Ct. at 1774; Erickson, 76 Ohio St.3d at 11-12.
The trial court further concluded that, considering the totality of the circumstances, Trooper Myers had lawfully detained Wynter based on his reasonable suspicions of other criminal activity. Trooper Myers explained that he had been suspicious of the front license plate bolting, the dark windows, the after-market paint job, and Manuel's unusual driving mannerisms. Moreover, Trooper Myers' observations of the passenger turning around in his seat several times and disappearing from view caused him to become concerned for his safety. Based on these circumstances, Trooper Myers acted reasonably in ordering Manuel out of the car. Trooper Myers testified that as Manuel stepped out of the vehicle, she "had a very nervous [sic] and look of almost terror about her face." He stated that he had found her story about the funeral "very unbelievable" and that he had been concerned that the car, which Manuel admitted she did not own, had been stolen. Trooper Myers' suspicions of criminal activity were heightened when he approached the vehicle to obtain the vehicle registration and identification of the passenger and received a social security card from Wynter that was obviously fictitious. At that time, Trooper Myers also noticed that the vehicle did not have a glove box or center compartment and that Wynter also appeared "extremely nervous." Trooper Myers also observed "an overabundance of air deodorizers," the fuse box hanging over the clutch, and that the colors of the interior, the dash, and the console did not match each other. Trooper Myers testified that the condition of the vehicle was unusual for a 1995 car that otherwise had the appearance of a new car. From these circumstances, the trial court reasonably concluded that Trooper Myers had developed a reasonable suspicion of criminal activity that justified detaining Wynter and Manuel.
The trial court also concluded that the period of detention was not unreasonably long for Trooper Myers to "inquire about the vehicle's owner and to verify the driver's license before issuing a ticket." The trial court stated that the canine had appeared on the scene within four minutes. Shortly after its arrival, the canine detected the odor of narcotics. This alert furnished the officers with probable cause to conduct a full-scale search of the vehicle. State v. Palicki (1994), 97 Ohio App.3d 175, 181. Thus, the investigative detention, which was justified by Trooper Myers' reasonable suspicions of other criminal activity, lasted a brief period of time, which we agree was not unreasonable.
The first assignment of error is overruled.
 II. THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO SUPPRESS AS IT RELATED TO THE SURREPITITIOUS [SIC] TAPING OF CONVERSATION BETWEEN CO-DEFENDANT MANUEL AND APPELLANT.
Wynter contends that the trial court should have suppressed the videotaped conversation between him and Manuel that had occurred in the back seat of the patrol car. According to Wynter, suppression was required because the surreptitious taping of this conversation violated his statutory and constitutional rights to be free from the interception of oral communications.
R.C. 2933.52(A) provides, in pertinent part:
(A) No person purposely shall do any of the following:
 (1) Intercept * * * a wire, oral, or electronic communication; * * *
 (3) Use, or attempt to use, the contents of a wire, oral, or electronic communication, knowing or having reason to know that the contents were obtained through the interception of a wire, oral, or electronic communication in violation of sections 2933.51 to 2933.66 of the Revised Code.
The definition of "oral communication" includes only words "uttered by a person exhibiting an expectation that the communication is not subject to interception under circumstances justifying that expectation." R.C. 2933.51(B). An aggrieved party may move the court to suppress the contents of an unlawfully intercepted oral communication. R.C. 2933.63(A)(1).
The trial court concluded that the conversation between Wynter and Manuel did not meet the statutory definition of an oral communication because Wynter and Manuel "were not reasonable in their expectation [that] their conversations would not be overheard, monitored or recorded." The trial court relied on U.S.v. Clark (C.A.8, 1994), 22 F.3d 799 and U.S. v. Morgan
(Tenn.App. 1996), 929 S.W.2d 380 in reaching this conclusion. InClark, the court stated that "a person does not have a reasonable or legitimate expectation of privacy in statements made to a companion while seated in a police car." Clark, 99 F.3d at 802. In reaching this conclusion, the court made the following observations:
 A marked police car is owned and operated by the state for the express purpose of ferreting out crime. It is essentially the trooper's office, and is frequently used as a temporary jail for housing and transporting arrestees and suspects. The general public has no reason to frequent the back seat of a patrol car, or to believe that it is a sanctuary for private discussions. A police car is not the kind of public place, like a phone booth, where a person should be able to reasonably expect that his conversation will not be monitored. In other words, allowing police to record statements made by individuals seated inside a patrol car does not intrude upon privacy and freedom to such an extent that it could be regarded as inconsistent with the aims of a free and open society. (Citation omitted.)
Id. at 801-802. Although the issue of whether an arrested person has a reasonable expectation of privacy in his statements made while seated in a patrol car has not been decided in Ohio, several other states' courts have answered this question in the negative. See Morgan, 929 S.W.2d at 384; State v. Ramirez (S.D. 1995),535 N.W.2d 847, 850; State v. Smith (Fla. 1994), 641 So.2d 849, 852;State v. Wischnofske (1994), 129 Or.App. 231, 234-238,878 P.2d 1130, 1132-1134; People v. Marland (1984), 135 Mich. App. 297,307-308, 355 N.W.2d 378, 383-384; People v. Crowson (1983),33 Cal.3d 623, 628-630, 660 P.2d 389, 392-393. See, also, State v.Petrey (Oct. 5, 1989), Cuyahoga App. Nos. 55273, 55274, unreported (stating that defendant had no reasonable expectation of privacy in drugs detected while he was sitting in a police cruiser).
We agree with the trial court's conclusion that Wynter's statutory rights had not been violated. Even though Trooper Myers had not informed Wynter and Manuel that the camera was running, they could not reasonably have expected their conversation to be private. Wynter and Manuel had already been Mirandized and arrested. Because Wynter had no reasonable expectation of privacy in the conversation, his rights under R.C. 2933.52(A) were not violated. Furthermore, because the constitutional protections against unreasonable searches and seizures provide relief only when an individual held a reasonable expectation of privacy in the place searched or the thing seized, Katz v. U.S. (1967),389 U.S. 347, 361 (Harlan, J., concurring), the trial court correctly determined that Wynter had not been deprived of his constitutional rights.
The second assignment of error is overruled.
The judgment will be affirmed.
YOUNG, P.J. and GRADY, J., concur.
Copies mailed to:
James D. Bennett
Steven R. Layman
Hon. Robert J. Lindeman