(975 P.2d 264)

No. 78,013

STATE OF KANSAS, *Appellee,* v. RONALD E. TIMLEY, SR., *Appellant.*

Opinion filed December 31, 1998.

*Ezra Ginzburg,* assistant appellate defender, and *Jessica R. Kunen,* chief appellate defender, for appellant.

*James A. Brown,* assistant district attorney, *Joan M. Hamilton,* district attorney, and *Carla J. Stovall,* attorney general, for appellee.

Before ELLIOTT, P.J., PIERRON and ROYSE, JJ.

ROYSE, J.: This is Ronald E. Timley, Sr.'s direct appeal from his convictions on charges of aggravated burglary, misdemeanor theft, criminal damage to property over $500, and obstructing legal process. He argues the district court erred by admitting certain videotaped statements into evidence and by failing to instruct on a lesser included offense. He further argues there was insufficient evidence to support his convictions on criminal damage to property and obstructing legal process.

On January 4, 1996, a neighbor noticed two black males running out of an elderly woman's home while carrying property. The neighbor called the police.

Officers Chapman and Hill responded to the call. They found Ronald Timley and Wayne Bruce in an alley behind the home. After a chase, the officers apprehended Timley and Bruce, handcuffed them, and placed them in the back seat of a patrol car.

The patrol car was equipped with a video camera. Officer Chapman removed a microphone from his uniform and placed it in the car. The officers started the camera and left the car. While alone in the car, Timley and Bruce made incriminating statements which were recorded on the videotape. During the trial, the tape was admitted into evidence over Timley's objection.

Timley's first argument on appeal is that the district court erred in admitting the videotaped statement. He contends admitting the videotape violated (1) his right to privacy, (2) his rights under *Miranda*, and (3) his constitutional right to confrontation.

Timley bases his privacy argument on the Fourth Amendment to the United States Constitution and on K.S.A. 22-2514 *et seq.* (the Kansas wiretapping statutes). He contends that he had a reasonable expectation of privacy while seated in the back seat of the patrol car. We disagree.

Under either the Fourth Amendment or the Kansas wiretapping statutes, the relevant inquiry is (1) whether Timley manifested a subjective expectation of privacy, and (2) if so, whether society is prepared to recognize that expectation as reasonable. See *California v. Greenwood*, 486 U.S. 35, 39, 100 L. Ed. 2d 30, 108 S. Ct. 1625 (1988); *Katz v. United States*, 389 U.S. 347, 361, 19 L. Ed. 2d 576, 88 S. Ct. 507 (1967) (Harlan, J., concurring); *U.S. v. Clark*, 22 F.3d 799, 801 (8th Cir. 1994); *State v. Howard*, 235 Kan. 236, 243, 679 P.2d 197 (1984).

While this case presents a question of first impression in Kansas, a number of other jurisdictions have already considered whether police recordings of an individual detained in a patrol car violate the Fourth Amendment. Those courts have uniformly rejected the Fourth Amendment challenge. For example, in *Clark*, the Eighth Circuit Court of Appeals concluded that even if one assumes an

individual has a subjective expectation of privacy under these circumstances, there is no reasonable expectation of privacy in statements made by one individual to another while both are seated in a patrol car:

"A marked police car is owned and operated by the state for the express purpose of ferreting out crime. It is essentially the trooper's office, and is frequently used as a temporary jail for housing and transporting arrestees and suspects. The general public has no reason to frequent the back seat of a patrol car, or to believe that it is a sanctuary for private discussions. A police car is not the kind of public place, like a phone booth [citation omitted], where a person should be able to reasonably expect that his conversation will not be monitored. In other words, allowing police to record statements made by individuals seated inside a patrol car does not intrude upon privacy and freedom to such an extent that it could be regarded as inconsistent with the aims of a free and open society." 22 F.3d at 801-02.

A number of other jurisdictions have joined the Eighth Circuit in concluding there is no reasonable expectation of privacy in a patrol car. *United States v. McKinnon*, 985 F.2d 525, 527-28 (11th Cir.), *cert. denied* 510 U.S. 843 (1993); *People v. Todd*, 26 Cal. App. 3d 15, 17 (1972); *State v. Smith*, 641 So. 2d 849, 852 (Fla. 1994); *State v. Hussey*, 469 So. 2d 346, 350-351 (La. App. 2d Cir. 1985); *People v. Marland*, 135 Mich. App. 297, 308, 355 N.W.2d 378 (1984); *State v. Wischnofske*, 129 Or. App. 231, 236-37, 878 P.2d 1130 (1994); *State v. Ramirez*, 535 N.W.2d 847, 850 (S.D. 1995). See Carr, The Law of Electronic Surveillance, § 3.2(b)(1) (1998).

Timley argues that *Clark* should not be applied, because it inappropriately focuses on the place searched rather than the people subjected to the search or seizure. He notes that in *Katz*, the United States Supreme Court observed that "the Fourth Amendment protects people, not places." 389 U.S. at 351. Timley acknowledges, however, that the location of the search is one factor which may be considered in determining whether the individual has a reasonable expectation of privacy. See *Mancusi v. DeForte*, 392 U.S. 364, 368-69, 20 L. Ed. 2d 1154, 88 S. Ct. 2120 (1968) (capacity to claim Fourth Amendment protection depends upon whether the area was one in which there was a reasonable expectation of freedom from governmental intrusion). See, *e.g., Green-*

*wood*, 486 U.S. 35 (no reasonable expectation of privacy in garbage bags left at the curb); *State v. Worrell*, 233 Kan. 968, 666 P.2d 703 (1983) (no reasonable expectation of privacy in the upper floors of a warehouse); *State v. Gordon*, 221 Kan. 253, 559 P.2d 312 (1977) (employer's premises); *State v. Waldschmidt*, 12 Kan. App. 2d 284, 740 P.2d 617, *rev. denied* 242 Kan. 905 (1987) (open fields).

Timley also attempts to distinguish *Clark* on the grounds that he did not ask to be placed in the patrol car. Timley does not explain why one who is in custody should have a reasonable expectation of privacy, whereas one who voluntarily sits in a patrol car does not. See, *e.g.*, *United States v. McKinnon*, 985 F.2d at 528 ("no persuasive distinction between pre-arrest and post-arrest situations"); *Ramirez*, 535 N.W.2d 847; *Smith*, 641 So. 2d 849; *Marland*, 135 Mich. App. 297.

Finally, citing *United States v. Hinckley*, 672 F.2d 115 (D.C. Cir. 1982), Timley argues that even a person confined in jail retains some Fourth Amendment protections. The *Hinckley* case involved a search of papers found in John Hinckley's cell while he was undergoing a pretrial mental evaluation following the attempted assassination of President Reagan. The court concluded that, under the circumstances, the search was an arbitrary invasion of Hinckley's right to privacy. 672 F.2d at 132.

Timley notes that the search in *Hinckley* did not comport with the prison's policy. From that fact, he infers that the State was required to show the officers here acted in accord with departmental policy when they recorded Timley's conversation. Such an inference is not warranted. The *Hinckley* decision discussed prison policy only in connection with the principle that courts give deference to prison administrators in the adoption and execution of policies needed to preserve order and discipline and maintain institutional security. 672 F.2d at 129. This case, however, did not turn on deference to administrative decisions, but on whether Timley reasonably expected that his conversation in a patrol car would be private. *Hinckley* is not on point.

For these reasons, we conclude that an individual placed under arrest does not have a reasonable expectation of privacy in statements made to a companion while both are seated in a patrol car.

Police recordings of individuals detained in a patrol car do not violate the Fourth Amendment to the United States Constitution or K.S.A. 22-2514 *et seq.*

Timley's second argument is that the videotaped statements were taken in violation of his rights under *Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602 (1966). Under *Miranda*, if a person in custody is to be interrogated, the person must first be informed of his rights. 384 U.S. at 444. The *Miranda* rights come into play when a person "in custody is subjected to either express questioning or its functional equivalent." *Rhode Island v. Innis*, 446 U.S. 291, 300-01, 64 L. Ed. 2d 297, 100 S. Ct. 1682 (1980).

Because Timley did not raise this argument in the district court, it is not properly before us. See *State v. Gardner*, 264 Kan. 95, 106, 955 P.2d 1199 (1998). Timley contends, nevertheless, that we should consider the issue as one " 'necessary to serve the ends of justice or to prevent a denial of fundamental rights.' " *State v. Bell*, 258 Kan. 123, 126, 899 P.2d 1000 (1995).

The parties agree that Timley was in custody and had not yet been *Mirandized* when the police recorded his conversation. The question, then, is whether Timley was subjected to interrogation or its functional equivalent. We conclude he was not.

To trigger *Miranda*, police conduct "must reflect a measure of compulsion above and beyond that inherent in custody itself." *Innis*, 446 U.S. at 300. For example, statements made by a suspect to an undercover officer in a cellblock are not subject to the *Miranda* requirements, because the element of coercion is lacking. *Illinois v. Perkins*, 496 U.S. 292, 296, 110 L. Ed. 2d 243, 110 S. Ct. 2394 (1990). Additionally, *Miranda* is not violated when a suspect makes voluntary comments to a friend who later reports those conversations to the police. See *Hoffa v. United States*, 385 U.S. 293, 304, 17 L. Ed. 2d 374, 87 S. Ct. 408, *reh. denied* 386 U.S. 940 (1966). "Officers do not interrogate a suspect simply by hoping that he will incriminate himself." *Arizona v. Mauro*, 481 U.S. 520, 529, 95 L. Ed. 2d 458, 107 S. Ct. 1931 (1987).

"Confessions remain a proper element in law enforcement. Any statement given freely and voluntarily without any compelling influences is, of course, admissible

in evidence. The fundamental import of the privilege while an individual is in custody is not whether he is allowed to talk to the police without the benefit of warnings and counsel, but whether he can be interrogated. . . . Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today." *Miranda*, 384 U.S. at 478.

Timley was seated in a police car with Bruce and was speaking voluntarily about his criminal conduct. If Bruce, or anyone else, had conveyed Timley's comments to the police, this appeal would be immediately disposed of by reference to *Perkins* and *Hoffa*. The only distinguishing feature here is that Timley was unaware the police would later have access to his statements by means of the videotape. No active or coercive police conduct was involved, beyond that inherent in the custody itself. No subtle psychological ploys were used. No questions were asked at all. Timley chose to speak, and nothing prevents his words from being introduced against him. See *Stanley v. Wainwright*, 604 F.2d 379, 382 (5th Cir. 1979); *State v. Edrozo*, 578 N.W.2d 719, 726 (Minn. 1998).

In summary, police conduct which involves the surreptitious videotape recording of statements made by an individual who is under arrest to a companion when both are seated in a patrol car is not the functional equivalent of custodial interrogation. Under such circumstances, *Miranda* warnings are not required.

Timley's third argument is that he was denied the right to confront his accuser when the taped statements were admitted into evidence. Timley points out that Bruce did not testify at trial, but that statements by Bruce which were on the recording were admitted into evidence.

Timley did not raise this issue at trial. Timley acknowledges the issue was not preserved, but urges us to address it "in the interests of justice." Another problem is that Timley has never identified the statements on the recording which he attributes to Bruce. "An appellant has the burden of furnishing a record which affirmatively shows that prejudicial error occurred in the trial court. In the absence of such a record, a reviewing court presumes that the action of the trial court was proper." *State v. Richard*, 252 Kan. 872, 874, 850 P.2d 844 (1993).

Even were we to accept Timley's argument that the district court erred by admitting the Bruce statements which were preserved on the recording, that error would not require reversal.

"Error in the admission or exclusion of evidence in violation of a constitutional or statutory right of a party is governed by the federal constitutional error rule. An error of constitutional magnitude is serious and may not be held to be harmless unless the appellate court is willing to declare a belief that the error is harmless. Before an appellate court may declare such an error harmless, the court must be able to declare beyond a reasonable doubt that the error had little, if any, likelihood of having changed the result of the trial. Where the evidence of guilt is of such direct and overwhelming nature that it can be said that evidence erroneously admitted or excluded in violation of a constitutional or statutory right could not have affected the result of the trial, such admission or exclusion is harmless." *State v. Sanders*, 258 Kan. 409, Syl. ¶ 6, 904 P.2d 951 (1995).

We have reviewed the videotape which is the subject of Timley's complaints. It is of poor quality. The visual images are blurred and indistinct. The sound is obscured by background noise. The conversation is difficult to hear and more difficult to understand. In contrast, Timley and Bruce were caught red-handed. A witness saw two black males coming out of a home carrying property. Minutes later, police responding to the call found Timley and Bruce in an alley behind the home. They were carrying the items later identified as the property stolen from the home. In short, we are able to declare without doubt that any error in admitting the recording could not have affected the result of the trial.

Timley next argues that there was insufficient evidence to support the jury's determination that he was guilty of obstructing legal process. This argument has merit.

K.S.A. 21-3808(a) states: "Obstructing legal process or official duty is knowingly and intentionally obstructing, resisting or opposing any person authorized by law to serve process in the service or execution or in the attempt to serve or execute any writ, warrant, process or order of a court, or in the discharge of any official duty." The statute thus encompasses two different possible scenarios— one in which an individual is obstructed in the service or execution of process or order of a court, the other in which an officer is obstructed in the discharge of any official duty. These two different possibilities are reflected in PIK Crim. 3d 60.08 and PIK Crim. 3d

60.09. This court has also concluded that PIK Crim. 3d 60.08, Obstructing Legal Process, should never be given when the officer obstructed is a uniformed and properly identified law enforcement officer. *State v. Lyne*, 17 Kan. App. 2d 761, 767, 844 P.2d 734 (1992).

In this case, the district court gave an instruction to the jury based upon PIK Crim. 3d 60.08, even though the evidence showed that Officers Chapman and Hill were uniformed and properly identified. That instruction required the State to show that the officers were obstructed in the service or execution of a particular paper or instrument, such as a writ or warrant or summons. Timley argues that there was no evidence the officers were serving any writ, warrant, process, or order of a court.

Simply stated, the plain language of K.S.A. 21-3808(a) as it describes obstructing legal process requires that there be some legal process that is obstructed. The statute defines "legal process" by example, listing writ, warrant, process, or order of a court. None of those things were present in this case. The district court inserted the term "felony arrest" into the instruction, but felony arrest without a warrant, as here, is not "legal process" as used in 21-3808(a).

The record in this case does not include evidence that the officers were obstructed in the service of legal process. Timley's conviction for obstructing legal process must be reversed.

Timley's final arguments concern the criminal damage to property charge. He argues the district court erred by failing to instruct on the lesser included offense of criminal damage to property to an extent less than $500. He also argues there was insufficient evidence that he committed criminal damage to property in an amount of at least $500 but less than $25,000. Both of these arguments center on Timley's contention that he only damaged the television which had a value of $381. He claims he did not personally damage the door to the victim's apartment or the clock which broke as Bruce fell to the ground.

Timley's arguments ignore the principle that an individual may be criminally responsible for the crimes of another if he intentionally aids, abets, advises, hires, counsels, or procures the other to commit the crime. K.S.A. 21-3205(1). This principle extends to

crimes which are reasonably foreseeable as a probable consequence of the crime intended. K.S.A. 21-3205(2). As the Supreme Court has observed, "when a person knowingly associates himself with the unlawful venture and participates in a way which indicates he willfully is furthering the success of the venture, such evidence of guilt is sufficient to go to the jury." *State v. Bailey*, 251 Kan. 156, 163, 834 P.2d 342 (1992); *State v. Wilson & Wentworth*, 221 Kan. 359, 367, 559 P.2d 374 (1977).

The complaint in this case charged Timley and Bruce jointly. The record of trial shows that the front door where the burglary occurred was severely damaged. The neighbor saw two black men leaving the front of the home carrying objects. The officers found footprints resembling Timley's at the scene, and they found Timley and Bruce carrying the stolen property in the alley. There is abundant evidence to show Timley's active participation. We find no merit in his challenges to the conviction for criminal damage to property.

Affirmed in part and reversed in part.