(23 P.3d 163)

No. 84,183

STATE OF KANSAS, *Appellee*, v. CHARLES D. COOPER, *Appellant*.

Opinion filed May 25, 2001.

*Kathryn B. Wall*, assistant appellate defender, and *Jessica R. Kunen*, chief appellate defender, for the appellant.

*Richard A. Olmstead*, assistant district attorney, *Nola Foulston*, district attorney, and *Carla J. Stovall*, attorney general, for the appellee.

Before PIERRON, P.J., MARQUARDT, J., and BUCHELE, S.J.

PIERRON, J.: Charles D. Cooper appeals his convictions for possession of cocaine and possession of cocaine without the proper tax stamp.

Wichita police officers Beck and Gilchrist inspected the premises of Zigefield's, an adult entertainment store. Zigefield's is in the business of renting videos to customers. The store also provides booths where customers can preview videos and another area of booths where customers can put tokens in a machine and watch videos.

The booths are approximately 3 feet by 4 feet in size and are enclosed by a door that opens outward and has a gap at the top and bottom. Wichita city ordinances forbid more than one person to occupy a booth at one time, and an individual in a booth is required to remain clothed. The reasons for these ordinances can be imagined.

Beck entered the preview area of Zigefield's and opened a booth door. Cooper was seated on a bench in the booth. Beck observed a pink piece of paper and a small straw on the bench next to Cooper. Beck believed the paper was a "snow seal," a piece of paper folded like an envelope used to hold cocaine powder or other drugs. Beck tested the powdery substance found on the paper and the straw. The substance tested positive for cocaine.

Cooper was arrested and placed in a patrol vehicle. Two more snow seals were found in his pocket. He admitted to snorting cocaine while in the video booth. He also admitted possessing more drugs in his vehicle, and three more snow seals containing cocaine and another straw were found in the vehicle. Cooper told Beck he had been using cocaine for 8 or 9 years, had bought about 4 grams that day, and had used about 1 gram.

Cooper was charged with one count of possession of cocaine and one count of unlawfully distributing or possessing cocaine without affixing the appropriate tax stamp. Cooper filed a motion to suppress the physical evidence and statements he made because the search of the booth violated his right to be free from unreasonable searches and seizures.

At the hearing on the motion, Beck testified that she conducts checks of businesses like Zigefield's, Excitement Video, and After

Dark, all adult entertainment businesses. The businesses are licensed by the city, and Beck inspects the businesses to ensure they comply with city ordinances. She performs the inspections during her working shift from 11 p.m. to 7 a.m., but the businesses are subject to inspection at all times.

In ruling on the motion, the district court took notice of an ordinance prohibiting booth doors or curtains from being locked and requiring the bottom of a booth door to be at least 15 inches from the ground and the top of the curtain or the door to be no more than 6 feet from the floor. The court also considered an ordinance requiring every adult entertainment establishment and its employees to admit any law enforcement officer to any and every part of the premises for the purpose of inspection. The court found that adult entertainment businesses are targeted for inspections to avoid certain criminal activity and Cooper did not have an expectation of privacy in the booth. Further, Beck's entry into the booth was not unreasonable in light of the facts of the case and the ordinance allowing for inspection.

The parties submitted the matter to the court for adjudication based on the evidence presented, and Cooper was found guilty of both counts. He was sentenced to 17 months in prison for possession of cocaine and ordered to serve 24 months on probation. He was sentenced to 6 months for not having a tax stamp and ordered to serve 24 months' probation.

"When reviewing a trial court's decision as to the suppression of evidence, an appellate court normally gives great deference to the factual findings of the trial court. The ultimate determination of the suppression of evidence is a legal question requiring independent appellate determination." *State v. Vandiver*, 257 Kan. 53, 58, 891 P.2d 350 (1995).

Cooper claims the evidence used to convict him was gained through an improper search and should have been suppressed. It is undisputed there was no search warrant in the present case. Searches conducted without a search warrant are per se unreasonable, subject to a few exceptions. *State v. Canaan*, 265 Kan. 835, 840, 964 P.2d 681 (1998). A search within the meaning of the Fourth Amendment occurs when a reasonable expectation of pri-

vacy is infringed. *State v. McMillin*, 23 Kan. App. 2d 100, 102, 927 P.2d 949 (1996). "What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection. [Citations omitted.] But what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected." *Katz v. United States*, 389 U.S. 347, 351-52, 19 L. Ed. 2d 576, 88 S. Ct. 507 (1967).

The relevant question in this case is whether Cooper had a constitutionally protected expectation of privacy in the video booth in which he was discovered with cocaine. The inquiry into such an issue involves a two-step process: Did Cooper manifest a subjective expectation of privacy, and, if so, is it an expectation society is prepared to recognize as reasonable? *State v. Timley*, 25 Kan. App. 2d 779, 780, 975 P.2d 264 (1999).

No Kansas cases have considered the expectation of privacy in video booths. Cooper cites two Texas cases for the proposition that booths in adult entertainment establishments are entitled to constitutional protection. In *Liebman v. State*, 652 S.W.2d 942 (Tex. Crim. 1983), police officers became suspicious of two individuals who had entered two separate but adjoining booths in an adult theater. The officers knew that a hole had been cut in the common wall between the two booths approximately waist high. The officers took turns boosting each other using cupped hands to view over the top of the booths from a couple of vantage points. The officers observed two men in sexual contact with each other through the hole. In addressing the question of whether individuals in the booths had a reasonable expectation of privacy, the court first considered the design of the booths. The booths were constructed of plywood walls and a door, all approximately 7 feet high. Movies were projected onto a screen on the inside of the door. One of the officers testified that, with the door closed, no one could see into the booth and most of the doors had locks. The tops of the booths were open.

The *Liebman* court then looked at the appellants' subjective expectation of privacy and noted they had closed the booth doors. The court stated: "[I]t is clear that a person would have a subjective expectation of privacy under the circumstances and conditions de-

scribed." 652 S.W. 2d at 946. The court addressed whether the subjective expectation of privacy was justified, that is, whether it was an expectation society was prepared to recognize as reasonable. The court found the theater management expected their patrons to have privacy in the booths and considered evidence that in the time since the appellant's arrest, the management had acquiesced in steps taken by patrons to block the view of outsiders over the tops of the booths. The court held a search had occurred because the appellants had a reasonable expectation of privacy in the booths. 652 S.W.2d at 946-48.

More recently, in *Wilkins v. State*, 829 S.W.2d 818 (Tex. App. 1992), a police officer was inspecting an adult arcade to ensure it was in compliance with city ordinances regulating such establishments. The store operated booths where customers could watch pornographic movies. The officer heard moaning sounds distinguishable from the movie sounds coming from inside the booth. The officer opened the curtain and observed two males with their pants undone fondling each other's genitalia. The court found that the closed curtain and the light outside the booth indicating the booth was occupied were evidence of a subjective expectation of privacy. The court also found these same factors to be evidence of an expectation of privacy as strong as that which would be given to someone in a bathroom stall and the expectation was one society would recognize as reasonable. 829 S.W.2d at 821.

Cooper also cites numerous cases from other jurisdictions for the proposition that booths in adult entertainment stores are similar to bathroom stalls, which have consistently been granted constitutional rights to privacy. There is ample authority to support the theory that bathroom stalls are intended to provide privacy and society would recognize that as a reasonable expectation. See *State v. Biggar*, 68 Hawaii 404, 407, 716 P.2d 493 (1986). Bathroom stalls do not provide complete privacy, "but an occupant of the stall would reasonably expect to enjoy such privacy as the design of the stall afforded." *People v. Kalchik*, 160 Mich. App. 40, 49, 407 N.W.2d 627 (1987).

There are key distinctions between a bathroom stall and a video booth in an adult entertainment establishment, particularly the

booth in the present case. The vast majority of bathroom stalls have locks, as did the video booth in *Liebman*. The functions bathroom stalls are supposed to serve involve intimate and personal activities and private functions. Despite the Texas cases discussed above, it is less clear that society would recognize as reasonable an expectation of privacy in an area to which the individual is not even allowed to lock out other individuals.

Another significant difference requiring discussion is the system of regulation the City of Wichita has established to deal with adult entertainment establishments. City ordinances regulate the physical arrangement of the interior of these businesses, the physical features of the viewing booths, how many people are allowed in each booth, and the criminal penalties to be imposed for violations of the ordinances.

The State asserts that the search by the police officers constituted an administrative search of a closely regulated business and, thus, no warrant was required.

It does not appear that Cooper or anyone else is disputing that adult entertainment establishments in Wichita are the target of special regulation and classified as pervasively regulated businesses. "An expectation of privacy in commercial premises, however, is different from, and indeed less than, a similar expectation in an individual's home." *New York v. Burger*, 482 U.S. 691, 700, 96 L. Ed. 2d 601, 107 S. Ct. 2636 (1987). "Individuals engaged in a closely regulated industry have a significantly reduced expectation of privacy." *State v. Bone*, 27 Kan. App. 2d 582, 585, 6 P.3d 914 (2000) (citing *Burger*, 482 U.S. at 700-02). This reduced expectation of privacy generally applies to the participants in the industry, and it is not clear whether a patron's expectations are accordingly reduced. As applied to Cooper's situation, the analysis of the expectation of privacy in a closely regulated business is material to his expectation as a customer but not dispositive of whether he enjoyed a reasonable expectation of privacy. If Cooper had a reasonable expectation of privacy in the booth, the ordinances regulating the adult entertainment industry in Wichita cannot be read to deprive him of that right.

Applying the two-part test in *Timley*, we must first determine whether Cooper manifested a subjective expectation of privacy. The facts of the case show he was in the booth with the door shut. The officer could not remember if the light indicating that the booth was occupied was activated. Cooper was aware the door to the booth could not be locked and there were spaces at the bottom and the top of the door where individuals could possibly see inside the booth. There were also city ordinances mandating that any and every part of the premise of this type of business is subject to inspection at any time.

We find that although Cooper may well have thought he was guaranteed privacy, there was no reasonable expectation of privacy based on the physical layout of the business. We also believe this was an appropriate administrative search of a heavily regulated business. Under either theory, Cooper's argument fails.

Affirmed.