NOT DESIGNATED FOR PUBLICATION

No. 126,748

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellant*,

v.

PAUL KEVIN KIHONGE,
*Appellee*.

MEMORANDUM OPINION

Appeal from Johnson District Court; MICHAEL P. JOYCE, judge. Submitted without oral argument. Opinion filed April 12, 2024. Affirmed.

*Jacob M. Gontesky*, assistant district attorney, *Stephen M. Howe*, district attorney, and *Kris W. Kobach*, attorney general, for appellant.

*Jean Ann Uvodich*, of Overland Park, for appellee.

Before SCHROEDER, P.J., ISHERWOOD and PICKERING, JJ.

PER CURIAM: The State brings an interlocutory appeal before this court after the district court granted Paul Kevin Kihonge's motion to suppress. The district court found that law enforcement officers unreasonably prolonged the inspection of Kihonge's commercial vehicle to allow time for a drug-sniffing dog to arrive and sniff for narcotics. On appeal, the State contends the district court erred in arriving at its conclusion because a warrantless search for narcotics falls within the scope of a commercial vehicle inspection, and there is not substantial competent evidence to support the trial court's finding that Deputy Johnson unreasonably extended the duration of the stop. The State

1

further argues that the district court erred when it sua sponte granted the motion to suppress on grounds not raised by Kihonge without granting the State another evidentiary hearing where it could submit supplemental briefing and call additional witnesses.

Following a careful review of the case, we are not persuaded by the State's arguments. A thorough review of the record reveals there is substantial competent evidence to support the district court's finding that the officers' extension of the stop lacked justification and was carried out to allow for the arrival of a drug-sniffing dog. The State's second assertion of error, that the trial court sua sponte granted Kihonge's motion on grounds not raised in the briefs, is likewise belied by the record. Both Kihonge's motion and the State's response addressed the prolonged duration of the traffic stop. Under these circumstances, we affirm the district court's suppression ruling.

FACTUAL AND PROCEDURAL BACKGROUND

Paul Kevin Kihonge was arrested during a commercial vehicle inspection and charged with possession of marijuana and drug paraphernalia. Prior to trial, Kihonge moved to suppress the evidence recovered from his vehicle, as well as inculpatory statements he made after a drug-sniffing dog alerted to the contraband. Kihonge alleged, among other violations irrelevant to this opinion, that police impermissibly extended the inspection of his commercial vehicle to allow time for the arrival of a drug-sniffing dog.

The district court conducted an evidentiary hearing to resolve Kihonge's motion, and the State called Kansas Highway Patrol Trooper Nicholas Wright as its first witness. Trooper Wright explained the administrative regulations governing commercial vehicle inspections, including the authorization process for vehicle inspectors. Trooper Wright then testified that Johnson County Sheriff's Deputy Bradley Johnson, who performed the inspection of Kihonge's vehicle, was authorized to perform commercial vehicle inspections at the time of the stop.

On cross-examination, Trooper Wright explained that a Level I vehicle inspection is a 37-step inspection which encompasses a review of the driver's credentials, license, medical certification, annual inspection, markings on the vehicle, and the vehicle's mechanical components. According to Wright, such inspections become even more involved when the vehicle is equipped with air brakes, such as Kihonge's, because the inspector is required to get under the vehicle and measure the movement of certain brake components. Trooper Wright testified that calling a drug-sniffing dog is not part of a typical inspection but can certainly occur if something in the inspection gives rise to reasonable suspicion that justifies further detention of the driver.

Trooper Wright testified that a typical Level I inspection, without major violations or mechanical issues, usually lasts 15 to 20 minutes for a box truck without air brakes and 30 to 45 minutes for a tractor trailer. He also testified that inspections involving multiple violations or mechanical problems take two to three hours.

Deputy Bradley Johnson testified as the State's second witness and informed the court that he was working as a certified motor vehicle inspector in Edgerton, Kansas, on September 20, 2022. That day, he pulled over a box truck with air brakes driven by Paul Kihonge for purposes of conducting a random Level I commercial motor vehicle inspection. As a standard part of that inspection, he ran Kihonge's license and discovered a two-year old nonextraditable warrant out of Arizona for possession of marijuana. The deputy also observed that Kihonge was traveling from Dallas to Kansas City without a logbook, and the truck had previously undergone maintenance after which the mechanic left tools in the engine. Based on this collective information, Deputy Johnson called for a K9 unit to conduct an open-air sniff for drugs. The dog arrived and waited until Deputy Johnson completed the vehicle inspection before conducting its sniff.

The dog alerted on Kihonge's truck prompting an inquiry to Kihonge as to whether there were narcotics in the vehicle. Kihonge admitted there was marijuana in the ashtray.

3

A subsequent search of the vehicle recovered 7.5 grams of marijuana, a vape pen with wax residue, multiple grinders, a paper roller, and a smoke filter. The full duration of Kihonge's vehicle inspection lasted 70 minutes.

After considering the evidence, the district court found that Deputy Johnson was properly certified and authorized to perform the inspection of Kihonge's vehicle. It then noted the evidence that the typical inspection of a tractor-trailer, without issues, lasts 30 to 45 minutes, a box truck without air brakes can be 15 to 20 minutes, while one with such brakes would run between 15 and 45 minutes, and "it can be up to two hours depending on what kinds of violations there are" and that the inspection of Kihonge's vehicle, with no issues noted, took 70 minutes. The district court concluded that Deputy Johnson called the drug-sniffing dog based on the nonextraditable warrant and "this inspection took longer than it would have normally and . . . the delay was caused by the deputy wanting to get the dog there to do the sniff." Based on these findings, the district court determined that the stop was unreasonably delayed and granted Kihonge's motion to suppress.

The State now brings its interlocutory appeal before this court to determine whether the district court erred in granting Kihonge's motion to suppress.

LEGAL ANALYSIS

*The district court did not err in granting Kihonge's motion to suppress.*

The State first contends the district court erred in suppressing the evidence on the basis of an unlawful extension of the duration of the stop because the court raised that issue on its own accord and declined to afford the State the opportunity to provide supplemental briefing or witness testimony on the matter. The State then also asserts there is nevertheless a lack of substantial competent evidence to support the district

4

court's factual findings that the traffic stop was impermissibly prolonged and that the involvement of the drug-sniffing dog prompted the extension.

In response, Kihonge counters that the issue concerning whether the drug dog impermissibly extended the length of the stop was not raised sua sponte and was addressed by both parties prior to the hearing by virtue of his motion to suppress and the State's response to that motion. He also maintains that the district court's factual findings are supported by substantial competent evidence and its legal conclusions are sound.

*Standard of Review*

"On a motion to suppress, an appellate court generally reviews the district court's findings of fact to determine whether they are supported by substantial competent evidence and reviews the ultimate legal conclusion de novo." *State v. Cash*, 313 Kan. 121, 125-26, 483 P.3d 1047 (2021). In reviewing the factual findings, an appellate court does not reweigh the evidence or assess the credibility of witnesses. *State v. Hanke*, 307 Kan. 823, 827, 415 P.3d 966 (2018); see also *State v. Talkington*, 301 Kan. 453, 461, 345 P.3d 258 (2015) (applying this standard of review on State's appeal after motion to suppress granted).

*General Rules*

The Fourth Amendment to the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Section 15 of the Kansas Constitution Bill of Rights provides identical protections from unlawful searches and seizures. *State v. Daniel*, 291 Kan. 490, 498, 242 P.3d 1186 (2010). A seizure occurs when a law enforcement officer restrains the liberty of a citizen by means of physical force or show of authority. *State v. Greever*, 286 Kan. 124, 135, 183 P.3d 788 (2008).

One example of a seizure is when an officer stops a vehicle on a public roadway. *State v. Marx*, 289 Kan. 657, 661, 215 P.3d 601 (2009). The State carries the burden to prove that the search and seizure were lawful. *State v. Goodro*, 315 Kan. 235, 238, 506 P.3d 918 (2022).

Warrantless searches are per se unreasonable unless they fall within one of the exceptions to the warrant requirement. *State v. Heim*, 312 Kan. 420, 422-23, 475 P.3d 1248 (2020). Here, the police relied on the exception allowing warrantless administrative searches of closely regulated businesses. *State v. McCammon*, 45 Kan. App. 2d 482, 485-86, 250 P.3d 838 (evidence discovered during fire department's search with administrative search warrant), *rev. denied* 292 Kan. 968 (2011); *State v. Cooper*, 29 Kan. App. 2d 177, 182-83, 23 P.3d 163 (whether individual has reasonable expectation of privacy during administrative search of heavily regulated business is fact-specific question), *rev. denied* 272 Kan. 1420 (2001).

Unlike searches of private homes, legislative schemes authorizing warrantless administrative searches of commercial property do not necessarily violate the Fourth Amendment. The greater latitude to conduct warrantless inspections of commercial property reflects the fact that owners of commercial property enjoy a lesser expectation of privacy than individuals do in the sanctity of their own homes. In certain circumstances, regulatory schemes authorizing warrantless inspections may adequately protect a commercial property owner's privacy interests. *Donovan v. Dewey*, 452 U.S. 594, 598-99, 101 S. Ct. 2534, 69 L. Ed. 2d 262 (1981).

Commercial motor carriers are highly regulated by the State of Kansas. Laws relating to motor carriers are found at K.S.A. 66-1,105 et seq., and regulations are found at K.A.R. 82-4-1 et seq. The Kansas Highway Patrol is authorized "to require the driver of any motor vehicle owned or operated by any such carrier to stop and submit such vehicle to an inspection to determine compliance with such laws and rules and

6

regulations." K.S.A. 74-2108(b); see K.S.A. 66-1324. In addition to Kansas Highway Patrol Troopers, "any law enforcement officer in the state certified in the inspection of motor carriers and authorized in accordance with the requirements of the Kansas motor carrier safety program" may conduct commercial vehicle inspections. K.A.R. 82-4-1(c); see K.A.R. 82-4-2a.

The Kansas Supreme Court has determined that K.S.A. 74-2108(b) is reasonable in allowing officers to stop commercial vehicles at any time, any place, and under any circumstances. The permissible scope of the search is narrowly defined and thus clearly constitutional. Drivers of commercial vehicles are on notice by statute that an officer may stop them for an inspection, but that inspection is limited to determining whether the driver and vehicle are in compliance with applicable motor carrier laws, rules, and regulations. *State v. Crum*, 270 Kan. 870, 873-76, 19 P.3d 172 (2001).

*Calling for a drug dog unreasonably prolonged the traffic stop.*

The district court granted Kihonge's motion to suppress after finding that Deputy Johnson unreasonably extended the duration of the traffic stop to allow enough time for the drug dog to arrive. The State contends that the district court's conclusion that Deputy Johnson intentionally and unreasonably extended the duration of the stop is not supported by substantial competent evidence.

The testimonies of Trooper Wright and Deputy Johnson both outlined the typical procedure for a Level I commercial vehicle inspection. The officers discussed the 37-step procedure and what it entails. It primarily consists of a review of the driver's credentials and a basic assessment of the truck's mechanical components. Neither officer mentioned the involvement of a drug dog as a routine part of the inspection.

The officers' testimonies were in alignment with Kansas statutes and regulations. To be clear, Kansas statutes prohibit the use or possession of drugs by drivers of commercial motor vehicles. See K.S.A. 66-1,130(b)(2)(C) (incorporating 49 C.F.R. § 392.4[a]). Even so, the Kansas regulations governing motor carriers do not mention drugs as a target of commercial vehicle inspections. See K.A.R. 82-4-1 et seq. Rather, the regulations on commercial vehicle inspections mainly focus on ensuring that vehicles and intermodal equipment are in good working condition and unlikely to break down or cause an accident. See K.A.R. 82-4-3j(a)(3) (incorporating 49 C.F.R. § 396.9). This is because a regulatory statute authorizing commercial vehicle inspections "must advise the owner of the commercial premises that the search is being made pursuant to the law and has a properly defined scope, and it must limit the discretion of the inspecting officers . . . 'in time, place, and scope.'" *New York v. Burger*, 482 U.S. 691, 703, 107 S. Ct. 2636, 96 L. Ed. 2d 601 (1987).

Since enlisting the assistance of a drug dog is not part of a standard commercial vehicle inspection, the normal rules for that law enforcement resource apply here. An officer's inquiries or actions unrelated to the justification for an initial traffic stop will convert the stop into an unlawful seizure if they measurably extend or prolong the stop. See *State v. Morlock*, 289 Kan. 980, 995-96, 218 P.3d 801 (2009). Detaining a driver for even a few extra minutes to allow for the arrival of a drug dog unreasonably extends the stop when the officer does not otherwise require more time to effectuate the initial purpose of the stop. See *State v. Coleman*, 292 Kan. 813, 822, 257 P.3d 320 (2011); *State v. Mitchell*, 265 Kan. 238, Syl. ¶ 3, 960 P.2d 200 (1998).

The district court found that Deputy Johnson's decision to extend Kihonge's stop was not supported by reasonable suspicion. Following a careful and thorough review of the record, we conclude there is substantial competent evidence to support that finding. Trooper Wright and Deputy Johnson both testified that an inspection of a box truck with air brakes and no readily identifiable mechanical issues, such as Kihonge's vehicle,

8

typically lasts between 15 and 45 minutes. Yet the inspection alone of Kihonge's vehicle spanned nearly 70 minutes. Deputy Johnson also explicitly testified that no regulatory violations or mechanical issues necessitated an extension of the stop, and the dog performed its tasks after the inspection was completed. Thus, the stop was seemingly extended by the deputy's decision to call for a K9 unit and initiate a drug investigation. These facts support the district court's conclusion.

The importance of properly defining the scope of an inspection and limiting the discretion of the inspecting officers must be appreciated. For instance, in *State v. Stevenson*, No. 100,238, 2009 WL 929320 (Kan. App. 2009) (unpublished opinion), an officer performing a regulatory search of a commercial vehicle discovered drugs and paraphernalia. At the beginning of the inspection, the officer discovered an insufficient logbook and began to look for receipts in the truck to prove the driver's whereabouts and compliance with the regulations. Eventually, the officer opened an eyeglass case that he found in the sleeper area and discovered two glass pipes with burnt methamphetamine residue. A panel of this court found that the search was authorized because the officer did not stop the truck to look for drugs and did not search the truck for drugs. Rather, drugs were found during the search for evidence to reconstruct the missing logbook information. 2009 WL 929320, at *4.

In *Stevenson*, the purpose of the search was to complete the commercial vehicle inspection. Here, Deputy Johnson could have performed a similar search for receipts due to Kihonge's missing logbook. Instead, he called for a K9 unit. The *intent* behind the actions clarifies why the physical search of the vehicle in *Stevenson* was within the scope of the commercial vehicle inspection while calling for a drug dog here is not. The dog is not an integral part of the standard commercial vehicle inspection. And unless there is reasonable suspicion to further investigate, the officer can only detain the defendant's vehicle for as long as it reasonably takes to complete the inspection which provided the

9

basis for the initial detention. In this way, the commercial trucking regulations limit the officer's discretion.

The district court also found that Deputy Johnson called the drug dog because of Kihonge's nonextraditable warrant out of Arizona. This was not a valid source of reasonable suspicion to extend the detention. Information concerning a defendant's prior drug involvement does not, without more, provide the necessary authorization for further detainment. See *State v. Morris*, 276 Kan. 11, 25, 72 P.3d 570 (2003); see also *State v. Rodenbeek*, No. 93,282, 2006 WL 903145, at *8 (Kan. App. 2006) (unpublished opinion) (Police officer did not have reasonable suspicion of drug activity to justify detaining the defendant longer than necessary to complete the traffic stop simply because the officer was aware that a woman previously overdosed outside the defendant's warehouse, that said warehouse was frequented by individuals with prior narcotics violations, and that the defendant had a prior arrest for drug possession.).

*Rodenbeek* and *Morris* both indicate that Kihonge's warrant from Arizona was not a valid basis for Deputy Johnson to turn this commercial vehicle inspection into a drug investigation. The circumstances of the traffic stop did not justify detaining Kihonge any longer than necessary to complete the vehicle inspection. Deputy Johnson's actions gave rise to a violation of Kihonge's Fourth Amendment right and thus the district court correctly granted Kihonge's motion to suppress.

*The district court did not sua sponte suppress evidence on grounds that were not raised by Kihonge.*

The State also argues that the district court erred by sua sponte suppressing evidence on grounds not raised by the defendant without permitting the State to submit supplemental briefing and call additional witnesses. This argument ignores the fact that the prolonged duration of the traffic stop was not only raised in Kihonge's motion to

10

suppress but also in the State's response to that motion. Under these circumstances, it was within the district court's discretion to decline the State's request for supplemental briefing and a successive evidentiary hearing.

As noted in the standard of review, suppression of evidence involves factual and legal components. The defendant's share of the burden rests on the factual side of the analysis. *State v. Estrada-Vital*, 302 Kan. 549, 557, 356 P.3d 1058 (2015). K.S.A. 22-3216(2) states that a defendant seeking to suppress evidence must file a written motion that "state[s] facts showing wherein the search and seizure were unlawful." The statute then provides that "[t]he judge shall receive evidence on any issue of fact necessary to determine the motion and the burden of proving that the search and seizure were lawful shall be on the prosecution." K.S.A. 22-3216(2).

Kihonge's motion met the burden of pleading facts showing that the search and seizure was unlawful. The motion explicitly alleged that a request was not made for the drug dog until after the vehicle inspection was completed and that the call ultimately extended the duration of the stop beyond the scope of the vehicle inspection. Therefore, the State cannot claim surprise in the wake of the district court's decision to grant the motion to suppress on this point. In fact, we know the State was not surprised because its response to Kihonge's motion argued that "the defendant's Fourth Amendment rights were not violated because the Commercial Vehicle Inspection was not prolonged." Since Kihonge pled facts demonstrating that his Fourth Amendment rights were violated, and the State's response directly addressed those facts, it cannot be said that the district court unfairly raised and relied upon an issue sua sponte.

Furthermore, the district court was in no way required to grant the State's request to file supplemental briefing and call additional witnesses. Generally, the decision to permit either the State or the defense an additional evidentiary hearing on a suppression issue rests within the district court's sound discretion based on the particular

11

circumstances. K.S.A. 22-3216 does not require successive hearings. The statute only calls for the district court to take such evidence as necessary to determine any fact issues pertinent to the suppression issues. The district court did that very thing in this case. See *State v. Peach*, No. 104,792, 2011 WL 4440184, at *2 (Kan. App. 2011) (unpublished opinion) (district court did not abuse its discretion in declining to hold a second evidentiary hearing).

CONCLUSION

Ultimately, the district court did not err here. Deputy Johnson went beyond the scope of a typical commercial vehicle inspection when he unreasonably prolonged the stop of Kihonge's vehicle to allow for the arrival of a drug dog. The district court correctly reached this conclusion at the evidentiary hearing and granted Kihonge's motion to suppress. Finally, the district court acted within its discretion by denying the State's request for supplemental briefing and a successive evidentiary hearing.

Affirmed.